The Sherwin-Williams Company, Appellant, v. Watson Industries Inc., Appellee.

Gen. No. 8,805.

Opinion
filed October 10, 1934. Rehearing denied January 2, 1935.

ENGLAND & O'TOOLE, WILSON & SCHMIEDESKAMP and WILLIAMS & WILLIAMS, for appellant; A. F. RACKERBY, of counsel.°

SHERMAN M. BOOTH, CATRON & HOFFMANN and MUMFORD & MUMFORD, for appellee.

MR. JUSTICE ALLABEN delivered the opinion of the court.

This is a creditors' bill brought by The Sherwin-Williams Co., a corporation, a judgment creditor, on behalf of itself and all other creditors of R. A. Watson Orchards Inc., against R. A. Watson Orchards Inc., a corporation, Watson Industries Inc., and John F. Butcher. The plaintiff on November 12, 1931, recovered a judgment in Cook county in the sum of $6,184.17 against R. A. Watson Orchards Inc., for an indebtedness incurred prior to November 1, 1930. A demurrer was filed to the original bill and sustained, whereupon plaintiff filed its amended bill, to which defendant, Watson Industries Inc., filed answer. The Hunter Lumber Company, by leave of court, as a judgment creditor, filed an intervening petition. To this intervening petition defendant, Watson Industries Inc., filed answer. Upon the amended bill of plaintiff, the intervening petition of the Hunter Lumber Company, and the answers of Watson Industries Inc., to said bill and intervening petition, a trial was had before the court without a jury.

Plaintiff's amended bill charges that the R. A. Watson Orchards Inc., hereinafter referred to as Orchards Company, was the owner of a large and valuable storage warehouse and vinegar plant, and other property, of the value of upwards of $400,000; that R. A. Watson, president of the Orchards Company, conspired with one of the defendants, John F. Butcher, whereby Butcher and others were to form a corporation, known as the Watson Industries Inc., hereinafter referred to as Industries Inc., for the purpose of having the property described as the storage warehouse and vinegar plant transferred from the Orchards Company to the Industries Inc., which said corporation, it is charged, was to be formed in fraud of the creditors of Orchards Company.

Plaintiff further charges that a contract was executed between the Orchards Company and Industries Inc. on the 4th day of November, A. D. 1930, whereby the property hereinabove referred to was to be sold for $75,000, and whereby Industries Inc. would assume a sprinkler contract made between the Orchards Company and the Cruickshank Company of New York, calling for eight payments of $5,490 each, beginning January 1, 1931. The contract for the organization of Industries Inc., it is charged, provided for a corporation with $75,000 first preferred stock, and 2,000 shares, no par common, to be issued to John F. Butcher, 1,000 shares of common stock to be placed in escrow with the First National Bank of Paris, Texas, for the benefit of the Orchards Company on the retirement of the preferred stock of Industries Inc. The amended bill charges further that the contract provided that the preferred stock might be retired in seven years from the earnings of the new company, or by payment of the difference between the earnings of Industries Inc., if less than $75,000 in seven years, and the $75,000; whereupon the 1,000 shares of preferred stock of In-

dustries Inc. held in escrow was to be transferred to the Orchards Company, fully paid and non-assessable.

It is further charged that the new corporation was formed and stock subscribed by John F. Butcher, J. A. McGill, J. C. DeShong, Reginald A. Watson and T. Boswell; that the property in question was conveyed by a general warranty deed to Industries Inc., on November 6, 1930; that the Orchards Company and Industries Inc., and John F. Butcher knew that the principal defendant, Orchards Company, was indebted in large sums and was actually insolvent at the time the conveyance was made; that the property conveyed was substantially all of the property of the principal defendant which was not incumbered for more than it was worth; that such conveyance rendered the Orchards Company totally insolvent, and was made for the purpose of hindering, delaying and defrauding plaintiff, and other creditors.

The amended bill further charges that the sprinkler system referred to was not the property of the principal defendant, the Orchards Company, but was purchased under a conditional sales contract, and the assumption of this contract by Industries Inc. was a savings in insurance made possible by the sprinkler system. The amended bill further charges that the consideration for the transfer of the property in question was inadequate; that a secret trust for the benefit of Orchards Company was created; that the plans were conceived and executed for a dishonest purpose, and that it was the intention of the Orchards Company to get back a one-half interest in the property conveyed to Industries Inc. free of the debts and obligations of the Orchards Company.

The amended bill further charges that a transcript of plaintiff's judgment was filed in Pike county; that executions were issued to the sheriffs of Pike and Cook counties; that both executions were returned,

"no property found no part satisfied"; and concludes with a prayer asking that the conveyance of November 6, 1930, including the purported deed, be set aside, vacated and declared null and void; that the property be ordered to be sold, in whole or in part; that the proceeds of said sale be distributed among those entitled thereto, as should be determined upon adjudication of the various claims in this proceeding; and that the plaintiff be paid the amount of its judgment together with its costs.

The intervening petition of the Hunter Lumber Company sets forth a judgment in the amount of $748.74 recovered on the 12th day of April, A. D. 1932, in Pike county, which is wholly unsatisfied and unpaid, for goods, wares and merchandise furnished by the intervening petitioner and used in the construction of the premises described in plaintiff's amended bill; that execution was issued thereon directed to the sheriff of said county, and returned on the 15th day of July, in the same year, unsatisfied. The intervening petitioner further sets up charges as to the fraudulent conveyance and the insolvency of the Orchards Company at the time the conveyance was made, to the same effect as were set out in plaintiff's amended bill.

Industries Inc. answer to plaintiff's amended bill, denying that the sheriffs of Cook and Pike counties were unable to find property upon which the execution of plaintiff could be levied, denying that the property in question is worth $400,000, as charged in the amended bill, and avers that the value of said property would not exceed $100,000. The answer denies any fraudulent plan or intent in the contract for conveyance, but admits the execution of the contract. It avers that the property conveyed was only a minor part of the property and assets of the Orchards Company, and denies that it was the most valuable part of said assets. The answer further avers that the con-

veyance was authorized by the board of directors of the Orchards Company, then owning more than two-thirds of the capital stock of said corporation. It denies the insolvency of the Orchards Company at the time of the conveyance and avers that the company was solvent at that time, and that it had assets greatly in excess of its liabilities. The answer avers further that the sale of the properties in question was made in good faith for an adequate consideration. The answer admits the legal title to the sprinkler system was in the Cruickshank Company, but denies that the sole consideration for the assumption of this contract was the saving in insurance to Industries Inc.

The answer of Industries Inc. to the intervening petition of the Hunter Lumber Company admitted the recovery of the judgment claimed by the intervening petitioner, the execution issuing thereon directed to the sheriff of Pike county, Illinois, and the amount due under the judgment. It further admits that the cause of action of the intervening petitioner was for an indebtedness due for goods, wares and merchandise sold by the intervening petitioner to R. A. Watson Orchards Inc., prior to the 1st day of November, 1930.

The answer avers that by reason of the facts stated in the intervening petition, that said petitioner has a statutory lien for the goods and merchandise furnished, against the premises of the Orchards Company, and had ample and sufficient security for said indebtedness on account of this lien; that said intervening petitioner is, therefore, precluded and prevented by law from asserting in this suit its right to become a party. In addition to these denials and averments the answer contains the usual general denial as to fraud and conspiracy.

After a full hearing the court entered a decree finding that the plaintiff had recovered judgment as alleged in the amended bill; that execution had issued

to the sheriffs of Cook and Pike counties, and both returned unsatisfied; that the Hunter Lumber Company had recovered judgment as charged in its intervening petition; that execution issued pursuant thereto was returned unsatisfied; that the defendant, Orchards Company, did not have any property in the counties of Cook or Pike out of which said execution could be satisfied, either in whole or in part; that the Hunter Lumber Company had furnished the goods, wares and merchandise which gave rise to its judgment prior to November 1, 1930, at which time the Orchards Company was the owner in fee simple of the premises described in the amended bill. The court further finds that R. A. Watson was president of, and the owner of a majority of the capital stock of, the Orchards Company; that he was one of the incorporators of Industries Inc., and a stockholder and director thereof; that John F. Butcher was likewise an incorporator, stockholder, director and officer of the latter company; that on or about the 4th day of·November, 1930, Orchards Company entered into a contract with John F. Butcher for the Industries Inc., as charged in the amended bill, for the conveyance of the premises therein described; that the stockholders of Industries Inc. were as charged in said amended bill; that Industries Inc. caused to be paid to Orchards Company the sum of $75,000 by crediting the Orchards Company with $48,000 owing by the Orchards Company to Butcher, and to corporations in which he had an interest, and by surrendering collateral held to secure said obligations; that as further consideration for said conveyance the Industries Inc. did pay the Orchards Company $27,000 in cash, with the understanding that Industries Inc. assumed the Cruickshank sprinkler contract in the amount of $43,984, and a mortgage of $2,000; paid the taxes for the year 1930 in the sum of $1,755, and assumed the payment of a

balance due upon an apple washing machine, in the sum of $800.. The court further found that Industries Inc. issued and delivered to John F. Butcher all of its preferred stock of a par value of $75,000, and 2,000 shares of common stock at a valuation of $37.50 a share; that the grantee in said deed of conveyance assumed the sprinkler contract, and other indebtedness mentioned, and accepted the premises conveyed in full payment for its total issue of $150,000 of capital stock. The court further found that the contract dated November 4, 1930, created a secret trust for the benefit of the Orchards Company by placing the 1,000 shares of common stock in escrow; that said secret trust and escrow agreement was designed and entered into on the part of Watson and the Orchards Company for the purpose of enabling said Orchards Company to retain a secret interest in the property conveyed, unknown to its creditors, and with the intent that upon the return of the consideration of $75,000 paid for the property within seven years the Orchards Company should have and retain a one-half interest in said property.

The decree further found that R. A. Watson became manager of Industries Inc. for seven years at a salary of $5,000 a year; that at the time of the making of the contract and arrangements, and of the conveyance of the real estate, warehouse and vinegar plant, Orchards Company was insolvent, which was known by R. A. Watson. The court further found that at the time of the transfer there was a deficit for the payment of liabilities in the sum of $180,867; that the conveyance and contract were entered into by the Orchards Company with the fraudulent intent to hinder, delay and defraud its creditors, and that said conveyance and contract did hinder, delay and defraud said creditors and did perpetrate an actual fraud upon said creditors; that Industries Inc. and John F. Butcher, acting

for it, did not have notice or knowledge of the intent of Orchards Company to hinder, delay or defraud its creditors, and in accepting said conveyance did not intend to hinder, delay or defraud creditors of Orchards Company; that these proceedings were brought on behalf of all persons, firms and corporations who were creditors of Orchards Company, from November 6, 1930, and who might intervene; that the contract of November 4, 1930, and deed of November 6, 1930, be set aside, declared null and void, but because Industries Inc. and Butcher had no actual notice or knowledge of the intent of Orchards Company to hinder, delay and defraud its creditors, be protected to the extent of $75,000 paid by it to Orchards Company out of said property; that plaintiff accepted Orchards Company note for $5,500 dated December 20, 1930, payable October 15, 1931, which note was tendered to Orchards Company by plaintiff during the trial, which said note was secured by trust deed dated January 12, 1931, upon certain property in Pike county, as collateral security for the note upon which the judgment of $6,184.17 was taken; that if said note were liquidated the indebtedness due plaintiff could not be satisfied, and as to the Hunter Lumber Company (cocomplainant), the original and amended bill of complaint were not without equity; that the court had jurisdiction of the subject matter. The court further found that the real estate should be sold by the master, subject to liens for taxes, the right, title of the Cruickshank Corporation; and that the rights and equities of other parties should attach to the proceeds of sale. The decree orders the deed of conveyance of November 6, 1930, set aside and all contracts, agreements, understandings and arrangements entered into on or about November 4, 1930, by and between Orchards Company and John F. Butcher for Industries Inc. under which the aforesaid deed of conveyance was executed,

be set aside, and declared a nullity; that the property described in the amended bill be sold by the master, and from the proceeds be paid: First, the master's costs and commissions; second, the court costs of plaintiff and coplaintiff; third, to Industries Inc. the sum of $75,000; fourth, plaintiff's reasonable solicitors' fees, to be subsequently fixed; fifth, the balance, if any, to be brought into court to abide the further order of the court. From this decree plaintiff and coplaintiff appeal to this court.

The evidence in this cause, which is very voluminous, tends to show that Orchards Company, which had been in existence for some years, beginning about 1929, had been operating at a loss, and was hard pressed for operating capital to meet its obligations. This is clearly indicated from the minutes of the board of directors of that company. Apparently that condition, as shown by the directors' minutes, steadily became worse during the years 1930 and 1931. This is further shown by various letters exchanged between John F. Butcher and R. A. Watson, president and director of Orchards Company. During the year 1930 Orchards Company was indebted to John F. Butcher, and companies in which he was interested, in the sum of approximately $48,000. On October 31, 1930, all of the real estate owned by Orchards Company, except 13½ acres in Adams county, and about four acres at Neoga, Illinois, was incumbered. It was being pressed by creditors, owed back salaries, and its borrowing power was practically exhausted. Warehouse receipts had been pledged for the purpose of obtaining credit, and there were mortgages on the apples before they were picked from the trees.

During the summer of 1930, Butcher, who, together with companies in which he was interested, was a creditor of the Orchards Company to the extent of approximately $48,000, entered into negotiations with Watson,

president of Orchards Company, which finally resulted in the making of a contract providing as follows: Butcher was to purchase the valley warehouse and by-products plant, equipment, including eight building lots, and approximately 45 acres of bottom land, and to pay therefor the sum of $75,000, and in addition, to assume a $2,000 mortgage then on part of the property, and also to assume the obligation of the Orchards Company for the sprinkling system installed in the plant, which amounted to approximately $5,490 a year, and to take the plant and equipment, subject to all taxes and assessments falling due after 1930; that this offer was made conditioned that the Orchards Company pay, out of the $75,000, purchase price, the company's obligations to the Cummer Manufacturing Company, the State Line Lumber Company, in both of which companies Butcher was financially interested, and John F. Butcher, individually, which indebtedness approximated $48,000, and all of which was secured either by real estate mortgages or warehouse certificates; that if the proposition was accepted by Orchards Company, Butcher would form a new corporation, with $75,000 of preferred stock of $100 par value, and 2,000 shares of no par value common stock, valued at $37.50 a share, to take over this property, and the property would be conveyed to the said new corporation in full payment of the capital stock to be issued by it, and that the name of the new corporation would be the Watson Industries Inc.; that the plant would be operated by this corporation, and if the net profits derived from its operation amounted to $75,000 within seven years from the date of the conveyance, then one-half of the capital stock of the new company, Industries Inc., was to be transferred to Orchards Company, fully paid and non-assessable, with the further provision that if the net profits of the company were less than $75,000 during the seven-year period, then the

Orchards Company should have the privilege of paying the difference between the $75,000, purchase price, and the net profits, and in such case would be entitled to the one-half interest in the stock set aside for it in escrow. This proposition was made upon the further condition that Orchards Company pay to the new company operating said plant certain storage charges on all apples then held in the warehouse. The contract was entered into on November 4, 1930, and the deed was executed on November 6, 1930.

The correspondence between Watson and Butcher shows conclusively that both Watson and Butcher were fully cognizant of the financial condition of Orchards Company; that said company was in a precarious financial condition, and that this sale would render Orchards Company insolvent; that the sale was taking the best assets out of Orchards Company, and by the secret agreement making it possible for Orchards Company to maintain an interest in the property, unknown to its creditors. This is further shown by the conversations between Butcher and Watson concerning whether Watson could hold the other creditors in check for four months. It appears that not long afterwards the interest which Orchards Company held in the trusteed stock was assigned to a creditor, and the assignment recorded. It further appears that R. A. Watson, who was president and a director of Orchards Company, was elected president of Industries Inc., was a director, and manager at a salary of $5,000 a year.

The judgment note on which judgment was confessed was in the principal sum of $5,500, with interest at the rate of six per cent per annum, contained the usual provisions in regard to attorneys' fees, was dated December 20, 1930, and the judgment was in the sum of $6,184.17 and costs. A note and mortgage covering what was known as the "Bluff Orchards" was dated January 12, 1931, payable to the order of bearer,

on or before five years after date, and bearing interest at the rate of seven per cent per annum after maturity, were executed by Orchards Company and left with Mr. England, one of the attorneys for plaintiff. The note and mortgage were never delivered to plaintiff. Mr. England told Mr. Watson that they did not want the mortgage, called the plaintiff's credit manager, who confirmed that statement. He also stated that he did not know that the note and mortgage were left with him at his office. He is corroborated in this by a letter from plaintiff to R. A. Watson, dated February 7, 1931, in which plaintiff says that the giving of a mortgage and note for $5,500 payable within five years with interest at seven per cent after maturity would not be satisfactory.

The court found in its decree, in the 13th paragraph, that at the time of the making of the contract and arrangements, on November 4, 1930, and the conveyance on November 6, 1930, the R. A. Watson Orchards Inc. was insolvent, and that such insolvency was known to R. A. Watson at the time of the making of the conveyance therein mentioned. That finding is sustained by the evidence. The further finding of the court, in paragraph 16, that said conveyance was made with the fraudulent intent to hinder, delay and defraud creditors, and did so, and did perpetrate an actual fraud, is also supported by the manifest weight of the evidence. "Insolvency as applied to a person, firm or corporation, engaged in trade is inability to pay debts as they fall due in the usual course of business." *Atwater v. American Exchange Nat. Bank of Chicago*, 152 Ill. 605.

The court further found, in paragraph 11, that the contract dated November 4, 1930, was designed and entered into on the part of R. A. Watson Orchards Inc. for the purpose of enabling said company to retain a secret interest in the property conveyed, unknown to its creditors. This finding is amply sus-

tained by the evidence. The fact that thereafter the contract was assigned, and the assignment was later recorded, or that a record of the transaction was made in the minutes of the directors of the Orchards Company, and in the written contract between the parties, does not change the fact that the agreement was secret and that there was no notice, constructive or otherwise, to other creditors. (*Schmidt v. Shaver,* 196 Ill. 108.) The court found in its decree, in paragraphs 15 and 17, that Industries Inc. and John F. Butcher, in acting for it, did not have notice or knowledge of the intent of R. A. Watson Orchards Inc. to hinder or delay its creditors, and did not intend to hinder, delay or defraud the creditors of R. A. Watson Orchards Inc., and that, therefore, Watson Industries Inc. in so far as the properties conveyed to it, and the prior equities therein would permit, should be protected to the extent of the $75,000 paid by it to the R. A. Watson Orchards Inc. In these findings, in our opinion, the court was in error. It seems clear from the testimony that Butcher was aware of the financial condition of the Orchards Company at the time of the making of the contract. He could not help but know that the contract created a secret trust and that the effect of it would be to hinder, delay and defraud other creditors. The discussion he had with Watson, as to whether or not Watson could hold off other creditors for four months, is clearly indicative that he was fully cognizant of the purpose and intent of Watson. The court found that it was the intent of Orchards Company and Watson to hinder, delay and defraud its creditors. Watson was president and a director of Orchards Company, and became president, director and manager of Industries Inc., immediately after its organization. If he knew it as president of Orchards Company he also knew it as president of Industries Inc. (*Simmons v. Roseland Security Vault Co.,* 331 Ill. 563.)

The court found, in the 18th paragraph, that plaintiff received and accepted from Orchards Company its note in the sum of $5,500 dated December 20, 1930, payable October 15, 1931, which was tendered to Orchards Company by plaintiff during the course of trial, and secured by a trust deed from Orchards Company to Chicago Title and Trust Company as trustee, as collateral security for the note upon which judgment was taken on November 12, 1931. In this finding it appears that the court was in error because the note secured by this trust deed was dated January 12, 1931, the same date as the trust deed, was payable to the order of bearer on or before five years after date, and bore interest at the rate of seven per cent per annum after maturity. The note for $5,500, dated December 20, 1930, and payable October 15, 1931, was the note upon which judgment was taken and forms the basis of this suit. It further appears that said note of $5,500, dated January 12, 1931, and secured by a trust deed, was never accepted by the plaintiff as security for the $5,500 note dated December 20, 1930, due October 15, 1931, on which judgment was confessed.

Mr. England's testimony, and the letter written by plaintiff to R. A. Watson, dated February 17, 1931, which states that the $5,500 note maturing in five years, and bearing no interest until after maturity, was not satisfactory, and asking that new trust deed for $6,000, drawn in the customary way with interest, be executed, seems conclusive that the note of January 12, 1931, for $5,500 without interest until after maturity, five years, was not satisfactory, and was never accepted by plaintiff as collateral.

Holding, as we do, that the contract and transfer in question were fraudulent, and made for the purpose of defeating the claims of creditors, of which both Orchards Company and Industries Inc. had knowledge, it, therefore, follows that the finding of the court

that, "The said Watson Industries Inc. in so far as the property so conveyed to it, and prior equities herein will permit, to be protected to the extent of Seventy-Five Thousand Dollars ($75,000) paid by it to the R. A. Watson Orchards Inc." must be set aside. "If the grantor or assignor sells for the purpose of defeating the claims of his creditors, and such grantee or assignee knowingly assists in effectuating such fraudulent intent, or even has notice thereof, he will be regarded as a participator in the fraud, for the law never allows one man to assist in cheating another. Bump on Fraudulent Conveyances (2d ed.) 197 *et seq.* A deed fraudulent in fact is absolutely void as against creditors, and is not permitted to stand for any purpose of reimbursement or indemnity." *Beidler v. Crane,* 135 Ill. 92, 99.

For the reasons above set forth, that part of the decree finding that the Watson Industries Inc. and John F. Butcher, in acting for it, did not have notice or knowledge of the intent of R. A. Watson Orchards Inc. to hinder, delay or defraud its creditors, and in finding that the said Watson Industries Inc. in so far as the properties conveyed to it, and prior equities therein, would permit, should be protected to the extent of $75,000 paid by it to the R. A. Watson Orchards Inc., and in ordering, adjudging and decreeing that out of the proceeds of the sale of the property ordered sold to the extent that said proceeds might be ample and sufficient and after the payment of the master's costs and commissions, and the court costs of the plaintiff said master should pay to Watson Industries Inc. the sum of $75,000, is reversed, with directions to the court to amend the decree in accordance with the findings of this court, allowing no reimbursement to the Watson Industries Inc. until appellant and all other creditors who may intervene are satisfied in full.

*Reversed and remanded with directions.*