John Cook and Lucretia Cook, Appellees, v. Ernest M. Tedrick et al., Appellants.

Term No. 49M14.

Opinion filed October 12, 1949. Released for publication November 21, 1949.

WILL P. WELKER, of Vandalia, and JACOBY, PATTON, MANNS & COPPINGER, of Alton, for appellants.

ROBERT G. BURNSIDE, of Vandalia, for appellees.

Mr. Justice Culbertson delivered the opinion of the court.

This cause comes to us by transfer from the Supreme Court of the State of Illinois as the appeal in the first instance was directed to said court, but a freehold not being involved the matter now comes to us for determination.

This is an appeal from a decree of the circuit court of Fayette county, setting aside deeds made by defendants, Ernest M. Tedrick and Lura Tedrick, his wife, to defendants, Dugan Tompkins and Eunice Tompkins, as joint tenants and not as tenants in common; Clarence Eller and Mabel Eller, as joint tenants and not as tenants in common; and Howard Heather, on the ground that the deeds were in violation of sec. 4 of the Frauds and Perjuries Act, ch. 59, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 55.04], and did not come within the provision of sec. 5 of said Act. The decree found that the defendants, Ernest M. Tedrick and Lura Tedrick, conveyed the real estate described in the complaint, with intent to defraud plaintiffs, and that the defendants, Dugan Tompkins, Eunice Tompkins, Clarence Eller, Mabel Eller, and Howard Heather, purchased said real estate with knowledge of such fraudulent intent on the part of their grantors and that such conveyances and each of them were, as to plaintiffs appellees, fraudulent, void, and of no force and effect, and said decree further expressly found that the purchasers of said property were not innocent purchasers for value, without notice.

The factual situation out of which this litigation arises discloses that plaintiffs appellees, John Cook and Lucretia Cook, his wife (hereinafter called plaintiffs), who were 67 and 68 years of age, respectively, lived on a small farm in Seminary township, in Fayette county, and that defendant, Ernest Tedrick, who had formerly resided in Seminary township, lived in the Village of Hartford, and for the preceding five years had been employed by the Woodriver Oil & Re-

fining Company. All the other defendants are residents of Seminary township, and all of them lived not more than two miles from the Cook residence. It appears that prior to the shooting out of which this case grew, Ernest Tedrick owned three tracts of land in Seminary township, having a total of 84 acres, and with his wife, Lura Tedrick, as joint tenants, owned a lot and dwelling house in the Village of Hartford, Illinois. It appears from the evidence that on the night of July 15, 1946, the defendant, Ernest Tedrick, shot plaintiff, John Cook, twice, with a shotgun, and as the result thereof it was necessary that the left hand of plaintiff be amputated; also a part of his left arm and his right thumb; and that he also sustained other injuries from the shooting.

On the 17th day of July 1946, the plaintiffs filed their complaint in the circuit court of Fayette county, against defendant, Ernest Tedrick, for the injuries so sustained and asked damages in the total of $75,000. The defendant, Ernest Tedrick, was served with a summons by the sheriff of Fayette county on July 18, 1946, and on the following day the said Tedrick and his wife, by three separate deeds, conveyed all of his Fayette county real estate to appellants, Dugan Tompkins and Eunice Tompkins, Clarence Eller and Mabel Eller, and Howard Heather. On July 22, 1946, the defendant, Ernest M. Tedrick and his wife, conveyed his home in Hartford to Albert L. Tedrick and Lura Tedrick, as joint tenants. On September 23, 1946, a judgment was entered in the circuit court of Fayette county against Ernest Tedrick, and in favor of the plaintiffs, John Cook and Lucretia Cook, on three separate verdicts, in the total amount of $12,000. On October 9, 1946, execution having been returned "unsatisfied" by the sheriffs of Fayette and Madison counties, the complaint in this case was filed.

The circumstances surrounding the shooting, as testified to by plaintiff, John Cook are undisputed and undenied, although the defendant, Ernest Tedrick, tes-

tified in his own behalf as to other matters on the hearing of this cause. It appears from the evidence that between 9:00 and 10:00 o'clock, on the evening of July 15, 1946, plaintiff, John Cook, heard a car stop on the road in front of his farm house, and heard someone call out, "Oh, John." He testified he walked toward the road and to within three steps of the car and inquired what was wanted. Ernest Tedrick, the sole occupant of the car, answered, "This is what I want," whereupon he stuck an automatic shotgun out of the car window and fired a shot, which struck Cook in the left hand and wrist, resulting in its later amputation. After this shot, Cook retreated to a point about eighteen feet from the car, when Tedrick pointed the gun at his head and fired a second shot. Cook threw up his right hand and the discharge severed his right thumb and inflicted injuries to his right arm and shoulder, after which Cook retreated into his home. It appears that Tedrick at no time got out of his car, but drove at once to the home of appellant Clarence Eller, where he informed Eller that he had "shot or killed" John Cook and wanted him to telephone the sheriff to come and get him. Tedrick remained at the Eller home until the sheriff came. Plaintiff, John Cook, testified when he was called out to the road he did not know who was in the car, and did not have any weapon in his hand, but that when he got close to him and Tedrick stuck the gun out of the window he recognized his assailant. It appears that shortly after the shooting appellant, Dugan Tompkins, stopped at plaintiff's home and helped to load plaintiff, John Cook, into a car when he was removed. It appears further from the evidence that appellant, Howard Heather, learned about the shooting on the following day. Appellant, Mabel Eller, wife of Clarence Eller, was at home on the night of the shooting when Tedrick came to their house, and the sheriff was called. It was stipulated on the hearing of this cause that appellant, Eunice Tompkins, wife of

Dugan Tompkins, learned of the shooting before the deeds in question were executed.

Appellants, Clarence Eller and Dugan Tompkins, contend that they had, for a considerable length of time prior to the shooting, carried on some negotiations with appellant, Ernest M. Tedrick, for the purchase of the respective tracts of land deeded to them on July 19, and they offered in evidence, Defendant Eller's Exhibit "1" which is as follows:

"March 23, 1946

Received from Clarence Eller $50.00 down payment for 40 acre farm next to Earl Tedrick Farm. Balance of money to be paid in 6 months or deal is off and I keep down payment. Will give abstracts when I give Deeds $1550.00.

Ernest Tedrick."

There was also offered and received in evidence, defendant Dugan Tompkins' Exhibit "1" which is as follows:

"$1030.00                              Feb. 20, 1946

Received of Dugan Tompkins $30.00 down Payment on land Joining his Farm balance to be Paid in 8 Months or I keep down Payment. Will give abstracts when I give deeds.

Ernest Tedrick."

With this evidentuary situation before him, the chancellor before whom this matter was tried, found that the several conveyances as made had been fraudulently made and set them aside.

■ It is contended on this appeal by defendants appellants that the decree in this case is manifestly against the law and the evidence. Section 4 of the statute in relation to frauds and perjuries renders void every conveyance made with intent to disturb, delay, hinder, or defraud creditors or other persons. Section

5 of the same Act sets forth an exception in the following language, ''The foregoing Section shall not effect the title of a purchaser for a valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor.'' A party having a claim for damages growing out of a personal wrong or tort, after suit therefor has been brought, is a creditor within the meaning of the statute of frauds and will be protected against a fraudulent conveyance made by the tortfeasor (*Bongard v. Block*, 81 Ill. 186).

No contention is advanced in this case that the purchasers had not paid a valuable consideration for the property they received, nor is it disputed that by the conveyance the appellant Tedrick was rendered insolvent and plaintiffs thereby barred from any recovery upon their judgment. It would seem that there were presented two questions of fact for determination: (First) Did grantor make the three conveyances in question with intent to disturb, delay, hinder or defraud plaintiffs in the collection of their judgment; and (Second) If such was the intent of the grantor, were the grantees without notice of such fraudulent intent and therefore excepted from the operation of the statute by the provisions of sec. 5. The chancellor, by his decree, determined each of these issues adversely to appellants. The question before this court is whether in view of the evidence in the case it can be said that in so finding the chancellor was clearly and palpably wrong.

The undisputed evidence of the manner in which the assault was made by the grantor, Tedrick, clearly shows that it was entirely unprovoked and, apparently, without a single mitigating circumstance. He must have realized that he would have absolutely no defense to a civil action in damages based on his wrongful conduct. Two days after the assault plaintiffs filed their suit, and the following day appellant,

Tedrick, was served with summons, and before noon of the next day the record discloses he summoned the purchasers to Vandalia and disposed of his farm land. Three days later, it appears from the evidence, he conveyed his last remaining asset, his home in Hartford, to a relative, and he had since that date been wholly without property, real or personal, and totally insolvent. It would appear to us that defendant, Tedrick, proceeded with dispatch to defraud a tort creditor he had greviously injured. Under the evidence produced in this case it seems to us that grantees unquestionably had notice of the fraudulent intent of their grantor, and in any event, they were certainly possessed of such facts as would place a reasonably prudent person upon inquiry and thus lead him to discover the fraud. Knowledge of the purchaser may be established by the pendency of litigation (*Svalina v. Saravana,* 341 Ill. 236, 250). Even though the grantee pays a full consideration, yet if the grantor sells for the purpose of defeating his creditors, and the grantee has notice thereof, he will be regarded as a participator in the fraud (*Svalina v. Saravana, supra; Beidler v. Crane,* 135 Ill. 92, 99; *Sherwin-Williams Co. v. Watson Industries, Inc.,* 277 Ill. App. 585). A transaction of this character cannot have equitable approval.

The decision of the chancellor in this case was clearly right and proper under the law and the evidence and same is, accordingly, affirmed.

*Affirmed.*

BARDENS, P. J., and SCHEINEMAN, J., concur.