CIRCLE SECURITY AGENCY, INC., Plaintiff and Counterdefendant-Appellee, *v.* LEWIS D. ROSS, Defendant and Counterplaintiff-Appellant.—(WEST SIDE AGENCY, INC., *et al.*, Counterdefendants-Appellees.)

First District (5th Division)    No. 80-279

Opinion filed August 28, 1981.

George V. Bobrinskoy, Jr., and Dennis A. McMahon, both of Mayer, Brown & Platt, of Chicago, for appellant.

Robert Marks, William S. Kaplan, and Spencer J. Marks, all of Chicago (Marks, Marks, and Kaplan, of counsel), for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Lewis D. Ross (defendant) and his wife own 49% of the shares of Circle Security Agency, Inc. (Circle), an Illinois insurance agency. Bernard Levin (Levin) and Harmon Kravitz (Kravitz) hold 51% of Circle's shares. Ross, Levin and Kravitz are the three directors of Circle, and the latter two are president and vice-president, respectively, of the company. West Side Agency, Inc. (West Side), is a subagent and wholly owned subsidiary of Circle. Following a dispute over the terms of an employment agreement between defendant and Circle, the latter brought a declaratory judgment action to determine the rights of the parties. Defendant then filed a counterclaim against Circle, West Side, and Levin and Kravitz (collectively referred to as plaintiffs) alleging that Levin and Kravitz violated various provisions of the Business Corporation Act (Ill. Rev. Stat. 1979, ch. 32, par. 157.1 *et seq.*) and the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 1—1 *et seq.*), and breached fiduciary duties owed defendant. The trial court dismissed defendant's counterclaim, finding that he had no standing to sue. Defendant appeals, solely contending that he has standing as a creditor and director of Circle to maintain the action.

In order to resolve this issue, a more detailed discussion of the facts is necessary. Prior to 1966, defendant and his wife were the sole stockholders of Circle. In January of 1966, defendant sold 51 percent of Circle to Levin and Kravitz pursuant to a reorganization agreement, a contract for the sale of defendant's stock and an employment contract. The agreements provide, *inter alia*, for the employment of defendant for the remainder of his life in an executive and managerial capacity, in exchange for an annual salary varying from $40,000 to $15,000, depending on the nature and extent of services rendered.

The agreements also provide for the sale of Circle's stock under various contingencies. Basically, if defendant predeceases Levin and

Kravitz, Circle is obligated to buy the shares of defendant and his wife (Ross shares) for $138,000. But, if Levin and Kravitz die while defendant is still living, their shares must be sold to Circle, thus making defendant and his wife sole shareholders again. During the lifetime of defendant, Circle has an irrevocable option to purchase the Ross shares for a fixed price.

The original declaratory judgment action brought by Circle has no relevance to this appeal. However, defendant's counterclaim alleged that Levin and Kravitz have committed unlawful acts, which include: (1) the failure to furnish defendant with notice of any shareholder or director meetings; (2) the misappropriation of substantial amounts of money from Circle and West Side; (3) the unlawful borrowing of funds from the corporation; and (4) the failure to hold any shareholder or director meetings, thus removing defendant from participation in the management of Circle.

In moving to dismiss the counterclaim in the trial court, Levin and Kravitz relied upon a provision of the stock sale agreement wherein defendant and his wife waived several of their rights as shareholders of Circle. Because of this waiver, it was argued, they faced no injury to the value of their shares as a result of the alleged misconduct of Levin and Kravitz, and thus had no standing to bring suit. The relevant provision in the stock sale agreement states:

> "16. Except as otherwise provided in the Agreement L. Ross and D. Ross agree to and do hereby waive, release and relinquish any and all rights, (except preemptive and voting) that each has or may be entitled to after the date hereof by reason of their stock ownership in Circle, including without limiting the generality of the foregoing any rights to participate in the net profits earned by Circle, to their proportionate share of the earned or other surplus of the corporation now or hereafter existing or created, to any distributions by way of dividends (stock, cash or otherwise), if any that may be declared, and to their respective proportion of the net assets or property of the corporation that may be available for distribution upon dissolution or liquidation in any manner whatsoever except as provided in paragraph 17 hereof."

The trial court, finding that defendant had failed to allege or show that he would suffer "any individual harm," dismissed the counterclaim.

OPINION

Defendant maintains that his standing to bring the counterclaim derives from his status as a creditor and director of Circle. In his counterclaim, however, defendant primarily alleged that he was instituting the action "in his own behalf and as a stockholder of Circle." The

two-count counterclaim prayed for the following relief: (1) an accounting and restoration of funds that were allegedly misappropriated; and (2) a constructive trust upon the allegedly misappropriated assets of the corporation. No relief was sought by defendant in an individual capacity; the remedies were requested on the corporation's behalf.

Plaintiffs initially argue that defendant failed to properly allege his status as a creditor and director of the corporation in the counterclaim. It is true that the complaint alleges that defendant brought the action in his capacity as a stockholder. Yet, it also states that defendant is a director of Circle and that his stock "is his only security for obligations owed him by Circle evidenced by certain contracts, appended as Exhibits to the Complaint and Answer in this action." In addition, defendant's memorandum in opposition to plaintiffs' motion to dismiss asserts that defendant had the right to bring suit as a creditor and director of Circle.

■■ In determining the propriety of a dismissal based upon a motion to dismiss, the appellate court is concerned only with questions of law presented by the pleadings. (*Oswald v. Township High School District No. 214* (1980), 84 Ill. App. 3d 723, 406 N.E.2d 157.) Generally, questions not raised by the pleadings cannot be urged for review. (*Ricke v. Ricke* (1980), 83 Ill. App. 3d 1115, 405 N.E.2d 351.) However, in this case, the issue as to defendant's status as a creditor and director was, indeed, set forth in his counterclaim. Both theories were also briefed and argued by both sides in the trial court. Because these are purely questions of law and were considered by the trial court, we will consider the issues as presented by defendant. See *People ex rel. Sterba v. Blaser* (1975), 33 Ill. App. 3d 1, 337 N.E.2d 410.

We first turn our attention to the issue of whether defendant was entitled to bring the counterclaim against plaintiffs in the capacity as a creditor of Circle.

It is well settled that where an officer or agent of a corporation breaches his fiduciary responsibility by wrongfully converting or misappropriating funds and thereby adversely affecting the contractual and equitable relation between the corporation and a creditor, the creditor can maintain an action against the officer personally. (*Pepper v. Litton* (1939), 308 U.S. 295, 84 L. Ed. 281, 60 S. Ct. 238; *Winger v. Chicago City Bank & Trust Co.* (1946), 394 Ill. 94, 67 N.E.2d 265.) The pivotal question in this case is whether defendant has sufficiently alleged his status as a "creditor" to maintain such a suit. The word "creditor" means a person to whom a debt is owing by another person. (*Woolverton v. George H. Taylor Co.* (1891), 43 Ill. App. 424.) That debt need not be due and payable. It is sufficient that the debt exists and is owing. *J. V. Northam & Co. v. Atherton* (1896), 67 Ill. App. 230.

In this case, defendant argues that his status as a creditor arises from

the stock sale agreement with plaintiffs. An examination of the provisions in question is therefore appropriate. Under paragraph 4 of the stock sale agreement, Circle has an irrevocable option during defendant's life to purchase the Ross shares. Paragraph 5 provides that Circle must buy the Ross shares upon defendant's death. We note, however, that the option referred to in paragraph 4 has not been exercised. Hence, no creditor-debtor relationship has arisen. In addition, defendant is still living and, therefore, paragraph 5 has not become effective. Thus, there is no debt that presently exists and is owing to defendant. Furthermore, paragraph 11 of the agreement states that Circle's options under paragraph 4 and obligations under paragraph 5 shall terminate if Levin and Kravitz predecease defendant. Therefore, defendant may never become a creditor of the corporation. In addition, if Circle's obligation to buy the Ross shares does, in fact, ripen at a later date, it is provided in paragraph 9 of the agreement that defendant shall be assigned, as security, monies due from policies written with specified insurance companies. Hence, even if Ross' estate should later become a creditor, the purchase price for the Ross shares to be paid his estate will not be in jeopardy. The only other relevant contingency is under paragraph 7 of the agreement, which provides that Circle must buy the shares of Levin and Kravitz if they predecease defendant. Defendant asserts that if this occurs, he and his wife will be required to buy the shares of a depleted corporation of which he was unable to earlier protect due to his lack of standing. First, the probability that this may happen is remote since defendant is substantially older than Levin and Kravitz. Second, Levin and Kravitz are presently alive and the obligations under paragraph 7 have not become effective. Finally, even if the event occurs, no "debt" would be owing to defendant and he would not be a "creditor" of the corporation.

■■ In summary, we find that defendant has no interest as a creditor in the corporation. He simply has no present debt owing to him by Circle. The possibility that one may arise is purely contingent upon the occurrence of various events. Therefore, it would be inequitable to require plaintiffs to defend the counterclaim in this case, since the possibility that they might become debtors of defendant may never arise.

■■ Defendant, in his reply brief, asserts that this status as a "contingent creditor" supplies standing to bring this action. Citing *Menconi v. Davison* (1967), 80 Ill. App. 2d 1, 225 N.E.2d 139, defendant argues that Illinois confers on a contingent creditor standing to set aside a fraudulent conveyance, and that he should likewise be allowed this right. We note, however, that *Menconi* is distinguishable from the present situation. There, the creditor obtained a judgment prior to filing the action. In fact, the rule in this jurisdiction is well established that the entry of a judgment against a debtor is a condition precedent to setting aside a fraudulent

conveyance. (*Scripps v. King* (1882), 103 Ill. 469; *Goembel v. Arnett* (1881), 100 Ill. 34.) Therefore, we find defendant's argument unpersuasive.

■■ Defendant next contends that he was standing as a director of Circle to maintain the counterclaim. No Illinois cases are cited by defendant in support of this proposition. We believe that no authority exists in this State that allows a director of a corporation to bring an action against a co-director to account for and pay over monies to a corporation because of the latter's misconduct. Generally, suits of this nature in other jurisdictions are rare, but may be brought if authorized by statute. (See, *e.g.*, *Williams v. Robinson* (1957), 9 Misc. 2d 774, 169 N.Y.S.2d 811, *aff'd* (1958), 5 App. Div. 2d 831, 170 N.Y.S.2d 991.) No Illinois statute allows this type of action. In 2 Fletcher, Cyclopedia on Corporations §535 (1969), the author, in commenting on the disallowance of suits by individual directors, stated:

> "The board of directors of a private business corporation institute, prosecute, compromise, or appeal suits at law and in equity which the corporation brings or which are brought against it, *provided, of course, the directors act as a body and not as individuals in authorizing an action.*" (Emphasis added.)

The reason for not allowing directors to sue each other is that they, as mere agents of the corporation engaged in conducting its business, have no interest in the corporate property. Hence, they cannot sue as individuals to protect that property. See *Starring v. Kemp* (1936), 167 Va. 429, 188 S.E. 174.

■■ Here, defendant not only lacks an interest in the corporate property in his capacity as an individual director, but also as a shareholder. As earlier mentioned, defendant waived all of his rights as a shareholder (except certain voting rights) under paragraph 16 of the stock sale agreement. He, therefore, is exposed to no harm by way of reduction of the value of his shares due to plaintiffs' alleged misconduct. In order to maintain an action against a corporation, a shareholder must be able to show an injury to himself wherein his interests in the corporation are placed in jeopardy. (13 Fletcher, Cyclopedia on Corporations §5948 (1980).) Defendant can suffer no individual injury under the circumstances of this case, and thus he lacks standing to maintain the counterclaim.

Accordingly, we conclude that the trial court correctly dismissed defendant's counterclaim. We affirm.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.