912 P.2d 828

FIRST SOUTHWESTERN FINANCIAL
SERVICES, Plaintiff–Appellant,

v.

Harvey PULLIAM a/k/a Eugene Harvey
Pulliam a/k/a E. Harvey Pulliam and
Katherine M. Pulliam a/k/a Katherine
M. Vidaurri a/k/a Katherine M. De Shon,
Defendants–Appellees.

No. 16453.

Court of Appeals of New Mexico.

Jan. 22, 1996.

Alfred M. Sanchez, Albuquerque, for Plaintiff–Appellant.

Paul F. Becht, Albuquerque, for Defendants–Appellees.

*OPINION*

BUSTAMANTE, Judge.

1. First Southwestern Financial Services (Plaintiff) appeals from an order dismissing its complaint against Harvey and Katherine Pulliam under the Uniform Fraudulent Transfer Act, NMSA 1978, §§ 56–10–14 to – 25 (Cum.Supp.1995) (UFTA), to set aside an allegedly fraudulent transfer of property. The trial court found that the limitations statute, Section 56–10–23(A), had fully run before Plaintiff filed its complaint. We affirm.

2. On January 8, 1990, Harvey sold a house to Katherine, who at that time was a single woman. Katherine recorded the deed with the Bernalillo County clerk on January 16, 1990. Harvey and Katherine married in June of 1990.

3. The Federal Deposit Insurance Corporation (FDIC) obtained a judgment against Harvey on October 9, 1991, based on Harvey's 1988 default under the terms of a promissory note with a now-failed New Mexico bank. We take judicial notice that, after taking over banks, the FDIC sometimes sells its "uncollectible judgments" to other entities at discounted prices. In their brief, the Pulliams claim, and Plaintiff does not deny, that the judgment against Harvey was one of those "uncollectible judgments." The judgment was assigned to Plaintiff by an instrument dated and signed on May 4, 1993.

4. Plaintiff filed this action on July 18, 1994 to set aside the transfer of the house from Harvey to Katherine as a fraudulent conveyance. The Pulliams moved to dismiss the suit, alleging it had been filed after the claim extinguishment provision of the UFTA had run. Because Plaintiff filed affidavits in support of its response to the Pulliams' motion to dismiss, we treat the court's action as a summary judgment. When facts relevant to a statute of limitations issue are not in dispute, the standard of review is whether the district court correctly applied the law to the undisputed facts. *Investment Co. v. Reese,* 117 N.M. 655, 657, 875 P.2d 1086, 1088 (1994).

5. Section 56–10–23(A) provides in pertinent part:

A cause of action with respect to a fraudulent transfer or obligation ... is extinguished unless action is brought ... within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant.

6. Plaintiff pursues two separate theories under the statute. First, Plaintiff asserts that its action is timely because the four-year limitation period should be calculated from the date of entry of the judgment in favor of the FDIC, October 9, 1991. Second, Plaintiff argues that the one-year period should be calculated from the date the FDIC's assignment of its judgment to Plaintiff was recorded, August 31, 1993. Using either method, Plaintiff's complaint filed July 18, 1994 would be timely. However, the plain language of the statute precludes adoption of Plaintiff's position.

■ 7. The first clause of Section 56–10–23(A) extinguishes causes of action asserting a fraudulent transfer after the passage of four years from the date of the challenged transfer. Here, the four-year period elapsed on January 16, 1994 at the latest because the deed from Harvey to Katherine was recorded on January 16, 1990. Plaintiff attempts to escape this conclusion by arguing that the words "or the obligation was incurred" in Section 56–10–23(A) allows the extinguishment period to begin running on the date of transfer *or* on the date judgment is entered against the party that has transferred property, whichever is later. Plaintiff thus seeks to equate entry of the judgment on October 9, 1991 with incurring an obligation within the meaning of the statute, citing *Eskridge v. Nalls,* 852 P.2d 818, 820–21 (Okla.Ct.App. 1993).

■ 8. Plaintiff misinterprets the statute. A debtor may effectively impair the ability of creditors to collect against him by incurring fraudulent obligations as well as by transferring properties. The UFTA recognizes this possibility by allowing creditors to set aside fraudulent obligations as well as transfers. In the statute, the word "fraudulent" modifies both "transfer" and "obligation." Thus, "obligation" throughout the statute refers to a "fraudulent obligation" that the debtor intentionally enters into with another. *See* §§ 56–10–18 to –23(C). The judgment obtained by the FDIC obviously was not a "fraudulent obligation" and the limitations period cannot be calculated from its entry.

■ ■ 9. The UFTA expressly limits the right to set aside a transfer to the time period in the statute, notwithstanding the date a party's cause of action might formally accrue. In this regard the UFTA operates in the same manner as other statutes of repose that extinguish a cause of action as of a certain date rather than simply blocking the remedy. *Cf.* NMSA 1978, §§ 37–1–27 & –28 (Repl.Pamp.1990); *Garcia v. La Farge,* 119 N.M. 532, 537, 893 P.2d 428, 433 (1995) (distinguishing between statutes of limitation and statutes of repose). For example, in this case, if the FDIC had obtained its judgment after January 16, 1994, the four-year period would have expired before the FDIC, or Plaintiff as its assignee, could assert a claim because under the UFTA a creditor's right to set aside an allegedly fraudulent transfer or obligation generally does not arise until it obtains a judgment against the debtor. *Cf. Garcia,* (stating that statutes of repose begin to run without regard to accrual of action).

■ 10. Plaintiff argues that it would be unfair and contrary to public policy to strictly apply the four-year period of Section 56–10–23(A), potentially foreclosing its action before it accrued. However, the UFTA also provides an additional, though shorter, time period to guard against the potentially harsh application of the four-year extinguishment provision. The second clause of Section 56–10–23(A) provides a period of "one year after the transfer or obligation was or could reasonably have been discovered by the claimant." The plain language of the statute makes the one-year "safety valve" limitations period available to all claimants under the UFTA.

11. Plaintiff's right to challenge the transfer arose at the earliest on May 4, 1993, when the FDIC executed the assignment of judgment. Plaintiff urges us to count the one-year period either from the date the

assignment was actually recorded in the records of the county clerk, or even later, from the date it actually discovered the transfer from Harvey to Katherine. We decline Plaintiff's invitation.

12. The date of recording the assignment is inappropriate because Plaintiff became entitled to collect the judgment against Defendant as of the date the assignment was executed by the FDIC, not the date Plaintiff chose to record it. The date Plaintiff's right arose, or accrued to it, is the most appropriate date to start counting the passage of time under the one-year period.

■ 13. Similarly, the statute forecloses using the date Plaintiff actually discovered the transfer. We accept Plaintiff's affidavit that the transfer was not discovered "until sometime in the fall of 1993." However, Section 56–10–23(A) provides that the one-year discovery period is to be counted from the time the "transfer or obligation was or could reasonably be discovered by claimant." In this context, the statute makes the most sense if it is interpreted to limit the one-year period to the shorter of the alternatives. *Cf. Ambassador East Apts. Investors v. Ambassador East Investments*, 106 N.M. 534, 537, 746 P.2d 163, 166 (Ct.App.1987) (finding that trial court properly determined as a matter of law that investors should have discovered fraud five years before claimed actual knowledge and applying that shorter alternative to the limitation statute).

■ 14. Applying the one-year limitation period to the undisputed facts in this case, we must determine whether, as a matter of law, Plaintiff reasonably could have discovered the transfer at the time it purchased the judgment. It is undisputed that the conveyance from Harvey to Katherine was properly recorded on January 16, 1990. There is, thus, no argument to be made that the conveyance was hidden in any way. We hold that Plaintiff, as a reasonably prudent entity, could have and should have made inquiry into the real estate records at the time it purchased the judgment on May 4, 1993. "[I]f, considering all the surrounding facts and circumstances, a reasonably prudent person in the exercise of ordinary diligence would have made inquiry as to the state of

the [real estate] record[s], he is chargeable with knowledge that such inquiry would have revealed from the time that it ought to have been made." *Romero v. Sanchez*, 83 N.M. 358, 362, 492 P.2d 140, 144 (1971). Plaintiff had until May 4, 1994, to file its suit, and it did not.

15. The judgment of the trial court is affirmed.

16. **IT IS SO ORDERED.**

APODACA, C.J., and DONNELLY, J., concur.