KENNETH W. LEVY, Plaintiff-Appellee, v. MARKAL SALES CORPORATION *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 1—98—0442

Opinion filed February 2, 2000.

Quinlan & Crisham, Ltd. (William R. Quinlan, Michael I. Rothstein, and James A. Niewiara, of counsel), and Kubasiak, Cremieux, Fylstra, Reizen & Rotuno (Gerald E. Kubasiak, of counsel), both of Chicago, for appellants.

Potratz & Hollander, P.C., of Chicago (Gary P. Hollander, of counsel), for appellee.

JUSTICE CERDA delivered the opinion of the court:

The circuit court pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308) certified the following question of law for an interlocutory appeal:

"Whether the four-year statute of limitations period provided by section 10(a) of Illinois' Uniform Fraudulent Transfer Act, 740 ILCS 160/10(a), runs from the date of the alleged fraudulent transfer or from the date of a subsequent judgment obtained by the creditor."

On March 26, 1998, this court, exercising its discretion, declined to consider the circuit court's Rule 308 order. However, on October 6, 1998, the Illinois Supreme Court issued a supervisory order vacating our March 26 ruling and directing us to address the question certified by the circuit court. In compliance with the supreme court's mandate, and pursuant to Rule 308, we allowed the instant appeal.

In October 1982, plaintiff, Kenneth Levy, filed suit on behalf of Markal Sales Corporation (Markal) and individually as one of its shareholders against several defendants, including two of Markal's corporate directors, Victor Gust, Jr., and Robert Bakal. In pertinent part, Levy alleged that Victor and Bakal breached their fiduciary duties to Markal by failing to present a business opportunity to the company before pursuing it on their own through a new business venture and by also using Markal assets for the benefit of the new business' operations.

In December 1986, during the pendency of Levy's case, Victor transferred, by quitclaim deed, his one-half interest in his family residence located in Park Ridge, Illinois, to his wife, Diana Gust. Prior to the transfer, Victor and Diana held the property as joint tenants. As a result of the transfer, Diana became the property's sole owner. Victor's transfer was formally recorded with the Cook County recorder of deeds on January 16, 1987.

After a lengthy bench trial, the circuit court found that Victor and Bakal breached their fiduciary duties to Markal and Levy, and on October 17, 1991, it issued judgment against them. On March 6, 1992, the court ordered Victor and Bakal, jointly and severally, to pay Levy $5,614,523.37 in actual damages and $3 million in punitive damages, for a total damages award of $8,614,523.17. The court later reduced the actual damages to $1,952,249.48, for a total damages award of $4,952,249.48.[1]

On March 9, 1992, Levy commenced supplemental proceedings under section 2—1402 of the Code of Civil Procedure (735 ILCS 5/2—1402 (West 1996)) to execute on the judgment by, in part, filing a citation to discover assets against Victor. On May 26, 1994, Levy filed a motion seeking a turnover of certain assets held by Victor. In count IV of his motion, Levy asserted for the first time that the December 1986

---

[1]On appeal, this court upheld the circuit court's decision and award of monetary damages. *Levy v. Markal Sales Corp.*, 268 Ill. App. 3d 355, 643 N.E.2d 1206 (1994).

transfer of Victor's interest in the Park Ridge property to Diana constituted a fraudulent transfer. In pertinent part, Levy alleged that Victor's transfer was made with the actual "intent to hinder, delay and defraud" him in violation of section 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act (Act) (740 ILCS 160/5(a)(1) (West 1996)).

■ Initially, we consider Levy's contention that we may go beyond the scope of the question certified to consider whether the Act can be applied retroactively under the circumstances of this case. Notably, the transfer at issue occurred some three years before the Act's effective date of January 1, 1990. Review of an appeal under Rule 308 is strictly limited to the question identified by the circuit court's order and will not be expanded on appeal to encompass other matters that could have been included but were not. *Sassali v. DeFauw*, 297 Ill. App. 3d 50, 51, 696 N.E.2d 1217, 1218 (1998); *McCarthy v. La Salle National Bank & Trust Co.*, 230 Ill. App. 3d 628, 631, 595 N.E.2d 149, 151 (1992). The issue of whether the Act could be retroactively applied was extensively addressed by the parties throughout the proceedings before the circuit court. The court rejected a claim by Levy that the Act could not be given retroactive effect, and it explicitly declined to certify this issue for our review, explaining that its order would only address the question of when the applicable limitations period commences under the Act. Indeed, the certified question reflected in the court's order speaks solely of this matter. The issue of retroactivity, despite its apparent relevancy, will therefore not be addressed on this appeal.

As noted, the question certified for our review concerns when the four-year statute of limitations contained in section 10(a) begins to run for purposes of an action brought under the Act by a tort claimant challenging a transfer of property by a defendant-debtor. In particular, we must determine whether the four-year limitations period commences to run on the date of the transfer challenged or, instead, on the date the creditor's claim is reduced to judgment.

■ In 1989, our General Assembly adopted the Uniform Fraudulent Transfer Act of 1984 (Uniform Act), which as noted became effective on January 1, 1990. Our state's act repealed the provisions contained in the statute of frauds that addressed fraudulent conveyances (Ill. Rev. Stat. 1987, ch. 59, §§ 4 through 7). Section 10 of the Act, which sets forth the time period in which a claim for relief must be brought, provides in relevant part:

"A cause of action with respect to a fraudulent transfer *** under this Act is extinguished unless action is brought:

(a) under paragraph (1) of subsection (a) of Section 5 [which addresses transfers made with actual intent to hinder, delay or

defraud], within 4 years after the transfer was made *** or, if later, within one year after the transfer *** was or could reasonably have been discovered by the claimant."[2] 740 ILCS 160/10(a) (West 1996).

The primary aim of statutory construction is to effectuate the intent of the legislature. *Ruva v. Mente*, 143 Ill. 2d 257, 263, 572 N.E.2d 888, 891 (1991). The best indicator of this intent is the express wording of the statute itself, which must be given its plain and ordinary meaning. *Namur v. Habitat Co.*, 294 Ill. App. 3d 1007, 1011, 691 N.E.2d 782, 785 (1998). Where the intent can be ascertained from the statute's plain language, that intent must prevail. *DiFoggio v. Retirement Board of the County Employees Annuity & Benefit Fund*, 156 Ill. 2d 377, 382, 620 N.E.2d 1070, 1073 (1993). Statutes of limitations must be construed in light of their objectives and must be liberally construed to fulfill the object for which they were enacted. *Namur*, 294 Ill. App. 3d at 1011, 691 N.E.2d at 785.

Section 10(a) explicitly provides that a cause of action attacking a transfer as fraudulent under paragraph (a)(1) of section 5 must be brought within 4 years "*after the transfer was made.*"[3] (Emphasis added.) 740 ILCS 160/10(a) (West 1996). As the clear and unambiguous wording of the Act demonstrates, the four-year limitations period begins to run on the date the challenged transfer was made. The explicit language of section 10(a) defeats any construction that the limitations period runs from the entry of judgment. Other courts applying the Act, although not squarely confronting the question presented in this case, have similarly indicated that the four-year period of limitations commences on the date of transfer. See *In re Gillissie*, 215 B.R. 370, 374 n.1 (N.D. Ill. 1997); *Gilbert Brothers, Inc. v. Gilbert*, 258 Ill. App. 3d 395, 399, 630 N.E.2d 189, 192 (1994).

The express aim of the Act is that its provisions be applied and construed to make uniform the law of fraudulent transfers among the states adopting the law. 740 ILCS 160/12 (West 1996). Thus, case law of other jurisdictions is relevant in resolving the question before us. Several courts have relied on the plain language contained in their respective statutes to find that the date the transfer is made represents the starting point for the four-year limitations period involved in this case. See *Freitag v. McGhie*, 133 Wash. 2d 816, 821, 947 P.2d 1186, 1188 (1997); *Intilli v. DiGiorgio*, 300 N.J. Super. 652, 661, 693 A.2d

---

[2]This provision is identical to the statute of limitations contained in section 9 of the Uniform Act. See Uniform Fraudulent Transfer Act, 7A U.L.A. § 9, at 359 (1998).

[3]Section 7 of the Act (740 ILCS 160/7 (West 1996)) specifies when a transfer is made and thus necessarily requires consideration when determining the timeliness of a claim.

573, 577-78 (1997); *First Southwestern Financial Services v. Pulliam*, 121 N.M. 436, 439, 912 P.2d 828, 830 (1996). The court in *First Southwestern* specifically rejected a creditor's claim that this time period begins to run from the judgment's date of entry. *First Southwestern*, 121 N.M. at 439, 912 P.2d at 830.

As Levy notes, one court has expressed a contrary position and has concluded that the four-year limitations period reflected in the Uniform Act commences from the time of judgment. In *Cortez v. Vogt*, 52 Cal. App. 4th 917, 60 Cal. Rptr. 2d 841 (1997), the plaintiff brought suit against the defendants under the Uniform Act as adopted by the California legislature for a transfer that had occurred during the pendency of earlier litigation between the parties. In successfully moving for summary judgment, the defendants argued that the plaintiff's claim was untimely because he failed to assert it within four years of the date of the alleged fraudulent transfer.

The California Court of Appeals, in finding the plaintiff's claim not time-barred, held that in cases where the alleged fraudulent transfer occurs during the pendency of a tort creditor's suit to establish his claim and the creditor waits until he secures judgment against the debtor before seeking to set aside the transfer, the four-year time period begins to run on the date judgment is entered. *Cortez*, 52 Cal. App. 4th at 937, 60 Cal. Rptr. 2d at 853-54. Notwithstanding the plain language of the statute, which the court noted "appears to be straightforward in its reference to the time 'the transfer was made,'" the court determined the Uniform Act incorporated prior case law holding that where a creditor waits to attack a fraudulent transfer until after judicial establishment of his claim, the statutory period of limitations commences upon the judgment's entry. *Cortez*, 52 Cal. App. 4th at 929, 60 Cal. Rptr. 2d at 848.

In reaching its conclusion, the *Cortez* court stressed the remedies afforded under the Uniform Act, as well as its predecessor statute, the Uniform Fraudulent Conveyance Act, are cumulative of remedies that existed before the uniform laws were drafted. *Cortez*, 52 Cal. App. 4th at 930, 60 Cal. Rptr. 2d at 849. The court noted the Uniform Act does not set forth a particular procedure for a creditor to seek relief against fraudulent transfers. Under the statute, a creditor is permitted, but not required, to maintain an action to annul a fraudulent transfer before his debt has matured. *Cortez*, 52 Cal. App. 4th at 930, 60 Cal. Rptr. 2d at 849. The court explained that, pursuant to preexisting remedies, a creditor could wait for his claim to be reduced to judgment before attacking a transfer as fraudulent. In such cases, the common law provided a creditor the benefit of a limitations period that began to run when judgment on the underlying debt became final. *Cortez*, 52

Cal. App. 4th at 929-30, 60 Cal. Rptr. 2d at 848-49. The court specifically found support for its holding in the committee comments published in conjunction with the Uniform Act.[4] *Cortez*, 52 Cal. App. 4th at 934-37, 60 Cal. Rptr. 2d at 852-53.

The court concluded that since the Uniform Act was a carryover of the remedies that existed under the prior law, the act incorporated the procedure of permitting a creditor to pursue his claim to judgment before seeking relief under its provisions and, as such, incorporated prior case law starting the limitations period from the time of judgment. *Cortez*, 52 Cal. App. 4th at 932, 62 Cal. Rptr. at 849-50.

■ We are not convinced by the *Cortez* analysis. Although the Uniform Act does not specify the particular method by which a fraudulent transfer is to be attacked, the limitations provision sufficiently delineates how an aggrieved creditor must proceed in order to obtain relief. As discussed, the Act's plain language clearly indicates that an action challenging a transfer as fraudulent on the basis that it was made with the actual intent to defraud, and of which the creditor had knowledge, must be brought within four years from the date the transfer was made. Consequently, a cause of action in such cases accrues when the transfer became effective, and the limitations period is not tolled until the creditor's claim is reduced to judgment. As drafted, the limitations provision requires a creditor in certain instances to institute action before judgment in order to preserve his claim against the fraudulent transfer. Although a creditor may elect to pursue his claim to judgment before instituting a fraudulent transfer action, he does so at the risk of losing his right to relief. See *Intili*, 300 N.J. Super. at 660, 693 A.2d at 577 ("the [Uniform Act] expressly limits a creditor's right to set aside a transfer to the time period in the statute, notwithstanding the date a party obtains a final judgment"). We do not agree with the reading given the committee comments by the *Cortez* court and do not believe those comments support the court's ruling.

We note several courts have determined that the limitations provision in the Uniform Act does not represent a traditional statute of limitations. Rather, according to these authorities, the act's provision

---

[4]The commentary relied on by the court states that "[t]he remedies specified in § 7, like those enumerated in §§ 9 and 10 of the Uniform Fraudulent Conveyance Act, are cumulative." Uniform Fraudulent Transfer Act, 7A U.L.A. § 7, at 341 (1998). In support of this statement, the drafters cite *Lind v. O.N. Johnson Co.*, 204 Minn. 30, 40, 282 N.W. 661, 667 (1939), *Conemaugh Iron Works Co. v. Delano Coal Co.*, 298 Pa. 182, 186, 148 A. 94, 95 (1929), and 1 G. Glenn, Fraudulent Conveyances and Preferences 120, 130, 150 (rev. ed 1940).

is more akin to a statute of repose since it operates to extinguish the cause of action on a certain date, *i.e.*, four years from the date of transfer. *Intili*, 300 N.J. Super. at 661, 693 A.2d at 577-78; *In re Princeton-New York Investors*, 219 B.R. 55, 62 (Bankr. D. N.J. 1998) (considering limitations provision under New Jersey uniform law); *First Southwestern*, 121 N.M. at 438, 912 P.2d at 830; *United States v. Vellalos*, 780 F. Supp. 705, 707 (D. Haw. 1992) (same under Hawaii uniform law). Indeed, the uniform committee comments reflect this approach. According to the drafters, the purpose of the limitations provision "is to make clear that lapse of the statutory periods prescribed *** bars the right and not merely the remedy." Uniform Fraudulent Transfer Act, 7A U.L.A. § 9, at 359 (1998).[5]

We are further cognizant of the concerns expressed by the *Cortez* court regarding the potential of needless litigation should a creditor be required to bring a fraudulent conveyance action during the pendency of his underlying claim. Yet, the Act plainly contemplates that such provisional litigation may be necessary under certain circumstances. In considering the operation of the Act's provisions in this case, we are solely concerned with determining the intentions of the legislature and giving that intent effect. We are not in the position to question the wisdom of the procedure necessitated by the Act or to explore alternative methods that may prove more efficient.

In support of his contention that the four-year limitations period in section 10(a) begins to run on the date of judgment, Levy notes that, under prior law, a judgment against the debtor was a precondition to an action seeking to set aside a fraudulent conveyance. See *Circle Security Agency, Inc. v. Ross*, 99 Ill. App. 3d 1111, 1115-16, 425 N.E.2d 1283, 1287 (1981) (stating the well-established rule in Illinois is that entry of judgment against a debtor is a condition precedent to setting aside a fraudulent conveyance); *Pape v. Pareti*, 315 Ill. App. 1, 5-6, 42 N.E.2d 361, 364 (1942), citing *Dawson v. First National Bank*, 228 Ill. 577, 579, 81 N.E. 1128, 1129 (1907). Relying on section 11 of the Act, Levy maintains the Act did not change the common law requirement of judgment. Section 11 of the Act states:

> "Unless displaced by the provisions of this Act, the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement its provisions." 740 ILCS 160/11 (West 1996).

---

[5]Although the uniform committee comments were not expressly adopted by the Illinois legislature, we believe they are nonetheless relevant and applicable in determining the meaning and application of the Act in this case.

Levy argues the Act supplemented, rather than displaced, the judgment requirement under preexisting law.

With the passage of the Act, however, a creditor is no longer required to secure a judgment before seeking relief from a fraudulent transfer. The drafters of the uniform law specifically noted a creditor is not required to obtain a judgment in order to proceed under the act. Uniform Fraudulent Transfer Act, 7A U.L.A. § 7, at 340 (1998); see also *Prescott v. Baker*, 644 So. 2d 877, 880 (Ala. 1994) (noting remedies under its state's version of uniform law are available notwithstanding the absence of judgment). Moreover, the Act's definitions of "creditor" and "claim" clearly indicate that a judgment is no longer a precondition to relief. See 740 ILCS 160/2(c) (defining "claim," in part, as "a right to payment, whether or not the right is reduced to judgment"), (d) (defining "creditor" as "a person who has a claim") (West 1996). Finally, section 8 of the Act provides, in part, that a creditor may obtain in an action for relief against a transfer or obligation:

"(1) [an] avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Code of Civil Procedure;

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure,

(A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(C) any other relief the circumstances may require." 740 ILCS 160/8 (West 1996).

Under the express wording of this provision, a creditor can take action against a fraudulent transfer before the entry of judgment. Contrary to Levy's contention, we conclude that the Act displaced the judgment requirement under the preexisting law.[6]

In answering the certified question, we conclude the four-year lim-

---

[6]In claiming a judgment is still required, Levy suggests that the five-year statute of limitations under section 13—205 of the Code of Civil Procedure (735 ILCS 5/13—205 (West 1996)) applicable to an action to set aside a fraudulent transfer by a tort claimant before the adoption of the Act always began to run on the date of judgment. However, this was not always the case. Under prior law, a cause of action accrued when (1) the claimant became a creditor (see *Tcherepnin v. Franz*, 457 F. Supp. 832, 838-39 (N.D. Ill. 1978) (applying Illinois law); *Cook v. Tedrick*, 338 Ill. App. 573, 578, 88 N.E.2d 515, 518 (1949)), (2) a judgment was entered establishing the creditor-debtor relationship (*Circle*

itations period contained in section 10(a) of the Act commences from the date the transfer is made, and not on the date judgment is entered.

Certified question answered and case remanded.

CAHILL, P.J., and BURKE, J., concur.

*Security*, 99 Ill. App. 3d at 1155-56, 425 N.E.2d at 1287), and (3) the creditor knew or reasonably should have known of his injury, *i.e.*, he knew of the fraudulent nature of the transfer (the "discovery rule") (*In re Martin*, 142 B.R. 260, 265 (Bankr. N.D. Ill. 1992) (applying Illinois law); *In re Lyons*, 130 B.R. 272, 278 (Bankr. N.D. Ill. 1991) (same)). It was possible in certain cases that a cause of action did not accrue until after the judgment was entered, that is, where the creditor did not have the requisite actual or constructive knowledge at the time of the judgment's entry. Thus, contrary to Levy's suggestion, the five-year limitations period did not in all cases commence at the time of judgment and thus was not the benchmark for determining the timeliness of a creditor's claim.