*In re* DETENTION OF HAROLD POWELL (The People of the State of Illinois, Petitioner-Appellee, v. Harold Powell, Respondent-Appellant).

First District (3rd Division)   No. 1—02—1421 ·

Opinion filed October 29, 2003.

Dennis A. Giovannini and David S. Olshansky, both of Giovannini & Olshansky, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Lisa A. Hoffman and Mark L. Josephson, Assistant Attorneys General, of counsel), for the People.

JUSTICE HALL delivered the opinion of the court:

The respondent, Harold Powell, appeals from an order of the circuit court of Cook County denying his motion to dismiss the State's petition to commit him as a sexually violent person.

On September 25, 2000, the State filed a petition to commit the respondent as a sexually violent person pursuant to section 15 of the Sexually Violent Persons Commitment Act (the Act) (725 ILCS 207/15 (West 2000)). The respondent filed a motion to dismiss the petition as untimely, alleging that the petition was filed more than 90 days prior to his entry into mandatory supervised release (MSR) or was not filed within 30 days of his entry into MSR, as required by section 15(b—5)(1) of the Act (725 ILCS 207/15(b—5)(1) (West 2000)).

At the hearing on the motion to dismiss, the respondent testified as follows.

The respondent was scheduled to be released from prison into MSR on September 30, 2000. On September 26, 2000, he was served with the State's commitment petition. On September 30, 2000, he was asked to sign his MSR papers. The respondent refused to sign the MSR papers because he wanted to serve his MSR in Tennessee and did not wish to accept parole in Illinois. Because he refused to sign the MSR papers, the respondent remained in prison. On March 14, 2001, the respondent signed the MSR papers due to the discontinuation of his blood pressure medication by the prison staff.

The circuit court denied the respondent's motion to dismiss, but certified the following question to this court:

"[W]hether the State's original Petition was untimely filed where it was not filed within 30 days of the respondent's release onto mandatory supervised release, or within 90 days after said release, as required by 725 ILCS 207/15(b—5)(1)."[1]

This court allowed the respondent's appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308).

## Analysis

### I. Standard of Review

■ Issues as to statutory construction are reviewed *de novo*. *In re Detention of Lieberman*, 201 Ill. 2d 300, 307, 776 N.E.2d 218, 223 (2002); *Revolution Portfolio, LLC v. Beale*, 332 Ill. App. 3d 595, 600, 774 N.E.2d 14, 19 (2002).

### II. Construction of Statutes

■ In *Lieberman*, our supreme court set forth the applicable

---

[1] The certified question, as posed in the circuit court's order, misquotes section 15(b—5)(1). Section 15(b—5)(1) requires that the petition must be filed "[n]o more than 90 days *before discharge or entry into mandatory supervised release* *** *and no more than 30 days after the person's entry into parole or mandatory supervised release.*" (Emphasis added.) 725 ILCS 207/15(b—5)(1) (West 2000).

criteria courts should utilize in construing a statute, stating as follows:

> "It is well settled that the primary objective of this court in construing the meaning of a statute is to ascertain and give effect to the intention of the legislature. [Citation.] All other rules of statutory construction are subordinate to this cardinal principle. [Citations.] We determine legislative intent by examining the language of the statute, which is 'the most reliable indicator of the legislature's objectives in enacting a particular law.' [Citations.] The statutory language is to be given its plain, ordinary and popularly understood meaning [citation], and we are to afford the statutory language the fullest, rather than narrowest, possible meaning to which it is susceptible [citation].
>
> Because all provisions of a statutory enactment are viewed as a whole [citations], words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute [citations]. Each word, clause and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous. [Citations.] Accordingly, in determining the intent of the legislature, the court may properly consider not only the language of the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. [Citations.] 'Legislative intent can be ascertained from a consideration of the entire Act, its nature, its object and the consequences that would result from construing it one way or the other.' [Citations.] In construing a statute, we also presume that the General Assembly, in its enactment of legislation, did not intend absurdity, inconvenience or injustice. [Citations.] 'Statutes must be construed in the most beneficial way which their language will permit so as to prevent hardship or injustice, and to oppose prejudice to public interests.' [Citations.]" *Lieberman*, 201 Ill. 2d at 307-09, 776 N.E.2d at 223-24.

■ Finally, where the language of a statute is clear and unambiguous, it will be given effect without resort to other aids for construction. *People v. Woodard*, 175 Ill. 2d 435, 443-44, 677 N.E.2d 935, 939 (1997). Criminal or penal statutes are to be strictly construed in favor of an accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute. *Woodard*, 175 Ill. 2d at 444, 677 N.E.2d at 939.

With these criteria in mind, we turn to section 15(b—5)(1) of the Act.

## III. Discussion

We observe, first, that the question, as certified by the circuit court, presupposes that the respondent's MSR did not commence on

September 30, 2000. However, the State's argument on appeal, in part, is that the respondent had entered upon MSR as of September 30, 2000.

There is a split among the authorities as to the scope of review of an appeal under Rule 308 as it relates to certified questions. *Arriola v. Time Insurance Co.*, 323 Ill. App. 3d 138, 142, 751 N.E.2d 221, 224 (2001). In *Arriola*, a division of this court followed the view that the appellate court is not limited to reviewing the question presented but may also consider the appropriateness of the order giving rise to the appeal. See *Arriola*, 323 Ill. App. 3d at 142, 751 N.E.2d at 224.[2]

However, in *Levy v. Markal Sales Corp.*, 311 Ill. App. 3d 552, 724 N.E.2d 1008 (2000), this division held that review of an appeal under Rule 308 was strictly limited to the question identified by the circuit court's order and would not be expanded on appeal to encompass other matters that could have been included but were not. *Arriola*, 323 Ill. App. 3d at 142, 751 N.E.2d at 224; *Levy*, 311 Ill. App. 3d at 554, 724 N.E.2d at 1009.

The issue of whether the respondent was on MSR as of September 30, 2000, was argued before the circuit court. The circuit court rejected the argument that by refusing to sign the MSR papers, an inmate could control when his MSR commenced. The circuit court concluded that the State had the right to rely on the "anticipated" date of release.

Therefore, the question of whether the defendant entered into MSR on September 30, 2000, or March 14, 2001, will not be addressed on this appeal. See *Levy*, 311 Ill. App. 3d at 554, 724 N.E.2d at 1009-10 (issue of retroactivity, while relevant, would not be reviewed, where that issue had been addressed before the circuit court, and the certified question was solely concerned with the applicable limitations period).

The issue presented by the certified question is, therefore, whether the filing requirements of section 15(b—5)(1) are mandatory or merely directory. Illinois courts have not previously addressed this question.

■ Section 15(b—5)(1) provides in pertinent part as follows:

"(b—5) The petition must be filed:

(1) No more than 90 days before discharge or entry into mandatory supervised release from a Department of Corrections correctional facility for a sentence that was imposed upon a

---

[2]In *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 469-70, 693 N.E.2d 358, 363-64 (1998), our supreme court observed that it "may go beyond the limits of a certified question in the interests of judicial economy" where appropriate. *Dowd & Dowd, Ltd.*, 181 Ill. 2d at 472, 693 N.E.2d at 365.

conviction for a sexually violent offense *** and no more than 30 days after the person's entry into parole or mandatory supervised release[.]" 725 ILCS 207/15(b—5)(1) (West 2000).

■ The use of the words "must" or "shall" is generally regarded as mandatory. *Andrews v. Foxworthy*, 71 Ill. 2d 13, 21, 373 N.E.2d 1332, 1335 (1978). When a statute prescribes the performance of an act by a public official or a public body, the question of whether it is mandatory or directory depends upon its purpose. *Andrews*, 71 Ill. 2d at 21, 373 N.E.2d at 1335. If the provision merely directs a manner of conduct for the guidance of the officials or specifies the time for the performance of an official duty, it is directory, absent negative language denying the performance after the specified time. *Andrews*, 71 Ill. 2d at 21, 373 N.E.2d at 1335. If, however, the conduct is prescribed in order to safeguard someone's rights, which may be injuriously affected by failure to act within the specified time, the statute is mandatory. *Andrews*, 71 Ill. 2d at 21, 373 N.E.2d at 1335-36.

In *Brennan v. Illinois State Board of Elections*, 336 Ill. App. 3d 749, 784 N.E.2d 854 (2002), the reviewing court held that a statutory provision providing that the board of elections "shall" render its judgment within 60 days was directory because there was no penalty for failing to comply with the provision and there was nothing to suggest that the plaintiff's rights were adversely affected by the board's failure to enter a final judgment within 60 days. *Brennan*, 336 Ill. App. 3d at 759-61, 784 N.E.2d at 862-63.

Section 15(b—5)(1) does not specify a penalty for the State's failure to comply with the time limitations for filing the petition. However, the respondent argues that his liberty rights were adversely affected by the State's failure to file the petition in accordance with those limitations.

" '[T]he presence of a parole system by itself does not give rise to a constitutionally protected interest in parole release.' " *Wilson v. Kelkhoff*, 86 F.3d 1438, 1446 (7th Cir 1996), quoting *Board of Pardons v. Allen*, 482 U.S. 369, 373, 96 L. Ed. 2d 303, 309, 107 S. Ct. 2415, 2418 (1987). "However, where a parole statute creates 'an expectation of parole,' an inmate has a protectable liberty interest in release." *Wilson*, 86 F.3d at 1446; *Allen*, 482 U.S. at 376-78, 96 L. Ed. 2d at 311-13, 107 S. Ct. at 2419-21. With the exception of inmates receiving certain sentences, the relevant Illinois statute provides for a protectable liberty interest in release; indeed, the statute requires that the Illinois Prison Review Board provide most inmates with a fixed release date. *Wilson*, 86 F.3d at 1446; 730 ILCS 5/3—3—2.1 (West 2000).

■ In cases such as these, inmates have an expectation of release. When the State files a petition to commit an inmate under the Act,

the State's action, while authorized by statute, necessarily interferes with that expectation. In order to protect an inmate's "liberty interest" in release, the legislature provided that the petition "must" be filed no more than 90 days before discharge or entry into MSR and no more than 30 days after the inmate has been paroled or has entered into MSR.

■ We glean some insight into this issue from mental health cases, since involuntary commitment proceedings likewise involve a person's liberty interests, and the statutory sections of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1—100 *et seq.* (West 1998)), like penal statutes, are to be strictly construed in favor of respondents. *In re Demir*, 322 Ill. App. 3d 989, 992, 751 N.E.2d 616, 618 (2001).

In *Demir*, the respondent had been brought to the hospital by the police. Having been brought to the hospital by the police, section 3—606 of the Code (405 ILCS 5/3—606 (West 1998)) required the police to complete the commitment petition. However, the petition was executed by a social worker pursuant to another provision of the Code allowing the petition to be completed by any person age 18 or older. In addition, the State also failed to file copies of the petition along with proof that the respondent had been served with a statement of rights within 24 hours of the respondent's admission to the hospital.

The reviewing court held that the trial court erred in denying the respondent's motion to dismiss the petition on both grounds. As to the failure of the police to complete the petition, the court noted that the "procedural safeguards in place are not mere technicalities to be sidestepped. Rather, the legislature created them to protect people from the deprivation of a liberty interest. [Citation]." *Demir*, 322 Ill. App. 3d at 994, 751 N.E.2d at 619.

As to the failure to file the petition within the time frame set forth in the Code, the court noted that failure to timely file the petition was an error that could not be waived or considered harmless error, and then stated as follows:

> " 'Given the important liberty interests of the respondent, we do not believe we ought to make a string of unsupported speculations in order to reach the ultimate assumption the proper procedures were followed. The deadlines set forth in the Code are not mere technicalities. They are bright lines created by the legislature to avoid deciding these cases on an *ad hoc* basis and to prevent abuse of the procedures involved.' " *Demir*, 322 Ill. App. 3d at 995, 751 N.E.2d at 621, quoting *In re Luttrell*, 261 Ill. App. 3d 221, 229, 633 N.E.2d 74, 80 (1994).

As in the present case, the *Demir* court was faced with balancing

the liberty interests of a group of individuals with the need to protect society. *Demir*, 322 Ill. App. 3d at 992, 751 N.E.2d at 618 (" 'Inherent in the civil commitment proceeding are the distinct interests of providing patients with necessary treatment as well as protecting society from dangerous conduct.' [Citation.]").

■ We conclude that the time requirements for filing a petition under the Act, as set forth in section 15(b—5)(1), are procedural safeguards, not mere technicalities, which have been put in place by the legislature to protect the liberty interest that an inmate has in release from prison. Therefore, the State's petition was untimely in that it was filed more than 90 days prior to the respondent's entry into MSR, and the State failed to file another petition within 30 days of the respondent's entry into MSR.

The State then argues that its petition was not untimely filed because the Act allows the State to file its petition based upon the "anticipated" date on which the respondent would enter into MSR. The State relies on section 10 of the Act, which provides in pertinent part as follows:

> "(b) If an agency with jurisdiction has control or custody over a person who may meet the criteria for commitment as a sexually violent person, the agency with jurisdiction shall inform the Attorney General and the State's Attorney in a position to file a petition under paragraph (a)(2) of Section 15 of this Act regarding the person as soon as possible beginning 3 months prior to the applicable date of the following:
>
> (1) The anticipated release from imprisonment or the anticipated entry into mandatory supervised release of a person who has been convicted of a sexually violent offense." 725 ILCS 207/ 10(b)(1) (West 2000).

The State argues that, under *Lieberman*, this court must construe the Act as a whole and that construing sections 10 and 15(b—5)(1) together shows that the legislature intended section 15(b—5)(1) to refer to "anticipated" discharge or entry into MSR, even though section 15(b—5)(1) does not use the term "anticipated." We disagree.

The process leading up to the filing of the petition begins with section 10(b)(1). Under that section, the notification to the Attorney General and the State's Attorney is to begin three months prior to the "anticipated" release or entry into MSR.

Next, section 15(a)(1) provides that if the Attorney General decides to file the petition, "he or she shall file the petition before the date of the release or discharge of the person or within 30 days of placement onto parole or mandatory supervised release." 725 ILCS 207/15(a)(1) (West 2000). Under that same section, if the petition is to be filed

prior to the inmate's entry into MSR, the legislature expressly required that the petition not be filed more than 90 days prior to entry into MSR or discharge. 725 ILCS 207/15(b—5)(1) (West 2000).

Construing these provisions together, we discern that the legislature's intent was that the concerned agencies and the Attorney General or the State's Attorney not act prematurely with regard to petitions under the Act. The fact that section 10(b)(1) refers to "anticipated" release or entry into MSR is for notification purposes. However, for the actual filing of the petition, the legislature set forth specific requirements as to when the petition must be filed.

We note that in section 10(b)(1), the legislature used the terms "3 months" and "anticipated" release or entry into MSR while in section 15(b—1)(1), the legislature used the terms "90 days" and "discharge or entry into mandatory supervised release." "It is well established that, by employing certain language in one instance and wholly different language in another, the legislature indicates that different results were intended. [Citations.]" *In re K.C.*, 186 Ill. 2d 542, 549-50, 714 N.E.2d 491, 495 (1999).[3]

We conclude that construing section 15(b—5)(1) of the Act as requiring that the petition be filed no more than 90 days prior to an inmate's "actual" entry into MSR rather than "anticipated" entry is consistent with the legislature's intent as expressed by the clear language of the Act.

Finally, with regard to the concern expressed by both the circuit court and the State, that such an interpretation allows the inmate to determine when his or her MSR commences, the legislature has provided that the petition under the Act may also be filed after the inmate has entered into MSR. Therefore, in a case such as the one before us, the State's premature filing of the commitment petition could have been remedied by filing another petition once the respondent actually entered into MSR.

In response to the question certified to us, we hold that the State's petition to commit the respondent under the Act was untimely where it was filed more than 90 days prior to his entry into MSR and not re-filed within 30 days of the respondent's entry into MSR.

Certified question answered and case remanded.

HOFFMAN, P.J., and KARNEZIS, J., concur.

---

[3]As a practical matter, "3 months" is not always the same as "90 days," given that months have varying numbers of days in them.