947 P.2d 1186 (1997)
133 Wash.2d 816
Rommel FREITAG and Bernice Johnson Freitag, Petitioners,
v.
Frank W. McGHIE and Darlene T. McGhie, husband and wife, and Dorothy Lunn, as her separate estate, Respondents.
No. 64501-9.
Supreme Court of Washington, En Banc.
Argued May 21, 1997.
Decided December 11, 1997.
As Amended December 18, 1997.
*1187 Maier & Severance, P.C., by Laurence Severance, Seattle, for Petitioners.
Sinsheimer & Meltzer, Inc. Lois Meltzer, Seattle, David Metcalf, Everett, for Respondents.
JOHNSON, Justice.
This case requires us to interpret the statute of limitations provision for the Uniform Fraudulent Transfer Act, RCW 19.40, and decide whether a claim must be filed within one year after discovery of the transfer or one year after discovery of the fraudulent nature of the transfer. The trial court, after finding clear and satisfactory proof of fraudulent intent, dismissed Petitioners' action. The court ruled the claim was barred by the statute of limitations because it was not filed within one year after discovery of the transfer. The Court of Appeals granted a motion on the merits to affirm. We reverse the Court of Appeals and hold it is the fraudulent nature of the transfer which triggers the statute.

FACTS
Respondents Frank and Darlene McGhie operated a home loans business in which Petitioners Rommel and Bernice Freitag invested substantial sums of money between 1986 and 1989. These investments did not yield the expected results and the Freitags began to investigate the possibility of wrongdoing on the part of the McGhies. On March 20, 1990, the Freitags sued the McGhies for securities fraud and on September 8, 1993 won summary judgments.
As a result of the proceedings in the securities fraud suit, on August 28, 1991 the Freitags obtained, through their lawyer, a title report related to the McGhie family residence. The report revealed an assessed value of more than $126,000. The report also revealed, however, encumbrances in the following amounts: $3,753 in past due taxes and interest; $70,000 in a 1977 deed of trust; $51,200 in a 1989 second deed of trust; and $65,000, entered on October 26, 1989, in a third deed of trust, to Dorothy Lunn. No net equity remains in the home after subtracting the liens from the assessed value.
In early to mid July 1993, the Freitags received a personal financial statement from Frank McGhie, noting $65,000 owed on the residence to "E. Lunn." "E. Lunn" was Dorothy Lunn's deceased husband. On July 27, 1993, the Freitags received a copy of the $65,000 note to Dorothy Lunn and on October 3, 1993, the Freitags traveled to Salt Lake City, Utah to meet with Ms. Lunn. Lunn repeatedly denied ever loaning any money to the McGhies. At that point, the Freitags believed "something was haywire."
Concerned the transfer might be fraudulent, the Freitags deposed Frank McGhie and Dorothy Lunn in early and late November 1993. During his deposition, Frank McGhie revealed the family relationship between himself and Lunn.
On November 30, 1993, the Freitags filed the instant suit to set aside the transfer as fraudulent. The trial court found the following facts: (1) the third deed of trust was *1188 issued to an insider, Dorothy Lunn, who was Darlene McGhie's aunt, with whom she shared a close relationship; (2) at the time the deed of trust was issued, the McGhies were facing the possibility of substantial judgments against them; (3) this deed of trust eliminated the McGhie's equity in their last asset and rendered them insolvent; and (4) the $65,000 deed of trust transfer from the McGhies to Lunn was not received in exchange for adequate consideration and the facts established proof of actual fraudulent intent by the McGhies.
The trial court, however, dismissed the action, finding the Freitags had filed their claim too late, based on the extinguishment provisions of the Uniform Fraudulent Transfer Act (UFTA). RCW 19.40.091(a). The court found the last possible date from which the one-year discovery period in the statute should run was August 29, 1991, when the Freitags discovered the existence of the deed of trust. Because the instant claim was filed later than one year from this date, the court dismissed the action.
The Freitags appealed and the McGhies filed a motion on the merits to affirm. The Court of Appeals Commissioner granted the motion, ruling the extinguishment provisions of the UFTA barred the Freitags' claim. In so ruling, the Commissioner relied on the Court of Appeals opinion in McMaster v. Farmer, 76 Wash.App. 464, 886 P.2d 240 (1994).

ANALYSIS
The statute of limitations for the UFTA states:
A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
(a) Under RCW 19.40.041(a)(1), within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant....
RCW 19.40.091(a).
The first clause of RCW 19.40.091(a) requires the Freitags to have filed their claim four years after the transfer was made or the obligation was incurred. The transfer from the McGhies to Lunn was made on October 26, 1989. Therefore, the latest the Freitags could have filed their claim was on October 26, 1993. Their claim, however, was filed on November 30, 1993, thus, the first clause of the statute is inapplicable.
We, therefore, turn to the second clause of RCW 19.40.091(a) to determine the meaning of the phrase, "within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." The Freitags argue they filed their claim in a timely fashion because this clause allows a claimant to file suit within one year of discovering the fraudulent nature of the transfer. The Freitags discovered the fraudulent nature of the transfer on November 2, 1993 and filed suit on November 30, 1993. The McGhies contend the statute should be read to require claimants to bring suit within one year of discovering or constructively discovering the transfer itself, and not the fraudulent nature of the transfer. Therefore, the McGhies assert, the Freitags should have filed suit by August 29, 1992, one year after the Freitags received the title report identifying the transfer to Lunn.
The sole issue in this case is whether RCW 19.40.091(a) begins to run when the plaintiff first discovers or could reasonably discover the transfer, or when the plaintiff first discovers or could reasonably discover the fraudulent nature of the transfer.
The Court of Appeals construed RCW 19.40.091(a) in McMaster v. Farmer, 76 Wash.App. 464, 886 P.2d 240 (1994), and held a fraudulent transfer claim must be commenced within one year of the discovery of the transfer and knowledge of the fraudulent nature of the transfer is not required to initiate the running of the statute. McMaster, 76 Wash.App. at 468, 886 P.2d 240. The Court of Appeals based its holding on the plain language of the statute.
Here, the McGhies rely on McMaster and assert because the term "transfer," as used in RCW 19.40.091(a), is plain and unambiguous, we need not apply rules of statutory construction to the statute. The McGhies *1189 further argue the term "transfer" is defined in the UFTA itself and means "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." RCW 19.40.011(12). This definition of "transfer," the McGhies assert, must be read into the statute every time the term "transfer" appears, and precludes a finding that the statute of limitations begins to run when the fraudulent nature of the transfer is discovered or could reasonably have been discovered. The McGhies further contend that this literal, narrow reading of the term "transfer" does not lead to absurd results. We do not agree.
Common sense and the statutory purpose of the UFTA necessitate a finding that the statute begins to run with the discovery of the fraudulent nature of the conveyance. A fraudulent conveyance or transfer may be defined as a transaction by means of which the owner of property has sought to place the property beyond the reach of his or her creditors, or which operated to the prejudice of the creditor's legal rights or the legal rights of other persons, including subsequent purchasers. Rainier Nat'l Bank v. McCracken, 26 Wash.App. 498, 506, 615 P.2d 469 (1980); 37 Am.Jur.2d Fraudulent Conveyances § 1 (1968). In 1987, the Legislature enacted the UFTA to replace the Uniform Fraudulent Conveyance Act (UFCA). Laws of 1987, ch. 444, § 10. The former UFCA had been, in general, a declaration of the common law. Osawa v. Onishi, 33 Wash.2d 546, 554, 206 P.2d 498 (1949).
Both the former UFCA and current UFTA, obviously, discourage fraud. The former UFCA did not contain a codified statute of limitations within the act itself. Fraudulent conveyance claims were ruled by the three-year statute of limitations for fraud. RCW 4.16.080(4) limits a claim for fraud to a three-year statute of limitations, and "the cause of action in such case [is] not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud...."
The discovery rule contained in the statue of limitations for fraud was applied in actions under the former UFCA, and the statute of limitations began to run when there was discovery by the aggrieved party of the facts constituting the fraud. Strong v. Clark, 56 Wash.2d 230, 232, 352 P.2d 183 (1960). Further, actual knowledge of the fraud was inferred if the aggrieved party, through the exercise of due diligence, could have discovered it. Strong, 56 Wash.2d at 232, 352 P.2d 183. Thus, the statute of limitations codified in RCW 4.16.080(4), and containing a discovery rule for fraud actions, was incorporated into the former UFCA. Strong, which was decided under the former UFCA, is relevant when interpreting the UFTA because the provisions and policies of the two acts are similar. See Sedwick v. Gwinn, 73 Wash. App. 879, 873 P.2d 528 (1994). We, therefore, hold the discovery rule is also incorporated into the UFTA statute of limitations.
Another purpose of the UFTA is to make uniform the law with respect to the subject of fraud among the states enacting it. RCW 19.40.903. In other words, the statute is intended not only "to establish greater uniformity in these limitations but also to reduce the time that is generally available under state statutes of limitations to four years for most transfers and obligations and one year for preferential transfers to insiders." Frank R. Kennedy, Reception of the Uniform Fraudulent Transfer Act, 43 S.C. L.Rev. 655, 684 (1992). It was the variance in the number of years each state allowed for a claimant to bring a fraudulent conveyance action which the UFTA sought to address and remedy. In enacting the UFTA, the number of years under Washington's statute of limitations became consistent with that of other states.
Contrary to the McGhies' assertion, nothing in the UFTA leads us to conclude that the UFTA sought to eliminate the common law and the former UFCA rule that a claimant have knowledge of the fraudulent nature of a transfer before the statute of limitations begins to run. When enacting new law, the Legislature is presumed to be aware of judicial construction of prior statutes. In re Marriage of Williams, 115 *1190 Wash.2d 202, 208, 796 P.2d 421 (1990). Absent an express indication otherwise, new legislation will be presumed to be consistent with prior judicial decisions. In re Marriage of Williams, 115 Wash.2d at 208, 796 P.2d 421. Further, within the UFTA itself lies a mandate to apply the common law to the extent it is not inconsistent with the provisions of the act. RCW 19.40.902 states: "Unless displaced by the provisions of this chapter, the principles of law and equity, including ... the law relating to ... fraud... supplement[s] its provisions." Although RCW 19.40.091(a) substituted a one-year rule for a three-year rule, there is nothing in the UFTA to indicate the Legislature intended to overrule the common law rule stated in Strong v. Clark, 56 Wash.2d 230, 352 P.2d 183, that the statute of limitations does not begin to run until all the elements of the cause of action for fraud are discovered or should have been discovered.
To rule otherwise would be to rule in complete derogation of the UFTA itself. The UFTA, as we have said, discourages fraud. If the statute were to begin to run when the transfer was made, without regard as to whether the claimant discovered or could have discovered the fraudulent nature of the transfer, those successful at concealing a fraudulent transfer would be rewarded. In this case, for instance, nothing on the instrument itself indicated a fraudulent transfer. The title report gives no indication of fraud. This transfer was to an insider, a family member, but the names were not the same and there was no indication of this relationship. The statute should not reward a person for successful concealment of fraud.
We hold RCW 19.40.091(a) provides a one-year period from the date of discovery of the fraudulent nature of the transfer within which to initiate a claim under the UFTA. To the extent McMaster v. Farmer, 76 Wash. App. 464, 886 P.2d 240 is inconsistent with this opinion, it is overruled. We reverse the Court of Appeals and remand for trial.
SMITH, GUY, MADSEN and TALMADGE, JJ., concur.
SANDERS, Justice. (dissenting)
Transfer means transfer. RCW 19.40.091 plainly provides any action to set aside a fraudulent transfer is extinguished one year after the transfer was, or could have been, discovered.
Prior to Washington's adoption of the Uniform Fraudulent Transfer Act (UFTA) in 1988, the general three-year statute of limitations for fraud governed fraudulent conveyance actions. Aberdeen Fed. Sav. & Loan Ass'n v. Hanson, 58 Wash.App. 773, 776, 794 P.2d 1322 (1990). Under the general statute a cause of action for fraud did not accrue until the claimant discovered facts constituting the fraud. RCW 4.16.080(4); Aberdeen, 58 Wash.App. at 778, 794 P.2d 1322. However the rule was changed by the Legislature upon adoption of UFTA.
RCW 19.40.091 is a new extinguishment statute without antecedent in the previous Uniform Fraudulent Conveyance Act (UFCA). See Frank R. Kennedy, Reception of the Uniform Fraudulent Transfer Act, 43 S.C. L.Rev. 655, 684 (1991).
Extinguishment of cause of action. A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
(a) Under RCW 19.40.041(a)(1), within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant; ...
RCW 19.40.091(a) (italics added).
RCW 19.40.091(a) simply provides a cause of action is extinguished within one year "after the transfer ... was or could reasonably have been discovered ...." (italics added). The court is not permitted to read into a statute "those things which ... the legislature may have left out unintentionally," Jepson v. Department of Labor & Indus., 89 Wash.2d 394, 403, 573 P.2d 10 (1977), nor can it "add words to a statute even if ... the legislature intended something else but failed to express it adequately." Vita Food Prods., Inc. v. State, 91 Wash.2d 132, 134, 587 P.2d 535 (1978). As Justice Holmes explained, "We do not inquire what the legislature *1191 meant; we ask only what the statute means." Oliver Wendell Holmes, Collected Legal Papers 207 (1920) (quoted in Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 397, 71 S.Ct. 745, 751, 95 L.Ed. 1035, 19 A.L.R.2d 1119 (1951) (Jackson, J., concurring)). Even if we were to inquire into legislative intent, we must "assume the legislature meant what it said," Jepson, 89 Wash.2d at 403, 573 P.2d 10, and we may not "add to, or subtract from, the language of the statute unless imperatively required to make it a rational statute." State v. Taylor, 97 Wash.2d 724, 728, 649 P.2d 633 (1982) (quoting McKay v. Department of Labor & Indus., 180 Wash. 191, 194, 39 P.2d 997 (1934)).
RCW 19.40.091 displaces the common law discovery of fraud rule by requiring the one-year limitation to run from the discovery of the transfer, not the fraud. The statute mandates the cause of action is extinguished "within four years" after the transfer was made or "if later, within one year after the transfer" was or could reasonably have been discovered. The Legislature used the word "transfer" in both the four-year and one-year provisions. No reason is advanced to give the same word, within the same sentence, two completely different meanings. As McMaster v. Farmer, 76 Wash.App. 464, 468, 886 P.2d 240 (1994), stated: "[W]e cannot conclude that the drafters of the 1-year clause carelessly used the plain word `transfer' when they actually meant `fraudulent nature of the transfer' or `proof of the elements of the cause of action.'" Id. However, the majority rewrites through judicial fiat the plain meaning of RCW 19.40.091(a), apparently believing the date the fraud is discovered makes better sense, or is more just, as a starting point.
Perhaps the Legislature indeed made the wrong choice; however, RCW 19.40.091(a) clearly reflects a rational and intentional choice, if not the best one. "The underlying purpose inherent in the function of judicial interpretation of statutory enactments is to effectuate the objective or intent of the legislature." Amburn v. Daly, 81 Wash.2d 241, 245, 501 P.2d 178 (1972). The stated legislative purpose of section 9 of UFTA, and consequently RCW 19.40.091(a), is to create an orderly, predictable, and uniform time for a claimant to bring a fraudulent transfer suit. The section as written, "transfer" and all, accomplishes just that. See Frank R. Kennedy, The Uniform Fraudulent Transfer Act, 18 UCC L.J. 195, 210 (1986); Uniform Fraudulent Transfer Act § 9 Comment, 7A U.L.A. 665-66 (1985) (UFTA § 9). As the Court of Appeals recognized, the statute exhibits a clear preference for finality and uniformity over flexibility. See McMaster, 76 Wash.App. at 470, 886 P.2d 240. The finality with which the trial court disposed of Petitioners' claims is exactly what the drafters of section 9 intended: it ended Petitioners' opportunity to file a lawsuit at a specific time one year after discovery of the transfer. This is a tough bright-line rule.
In a different sense the one-year discovery rule itself is designed to mitigate the harsh result of the four-year discovery rule that is embodied in the first part of RCW 19.40.091(a). "UFTA ... provides an additional, though shorter, time period to guard against the potentially harsh application of the four-year extinguishment provision.... The plain language of the statute makes the one-year `safety valve' limitations period available to all claimants under the UFTA." First Southwestern Fin. Servs. v. Pulliam, 121 N.M. 436, 912 P.2d 828, 830 (1996).
The majority opinion does some new mischief of its own. Its unique version of the rule undermines UFTA's goal of predictable, final, and uniform time limits within which a claimant's suit may be filed. However RCW 19.40.091's very purpose is to "mitigate the uncertainty and diversity that have characterized the decisions [in different jurisdictions] applying statutes of limitations to actions to fraudulent transfers and obligations." UFTA § 9 Comment (2) at 666. The statute was designed to create uniformity across states lines. See Kennedy, The Uniform Fraudulent Transfer Act, 18 UCC L.J. at 210; Michael L. Cook & Richard E. Mendales, The Uniform Fraudulent Transfer Act: An Introductory Critique, 62 Am. Bankr.L.J. 87, 95 (1988). But the majority destroys uniformity by making UFTA mean one thing in Washington and something else, everywhere else. Compare RCW 19.40.903 *1192 ("This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it.").
Notwithstanding, the majority claims the statute's goal of uniformity is served because "[i]n enacting the UFTA, the number of years under Washington's statute of limitations became consistent with that of other states." Majority at 1189. Not so. While the claim extinguishes after one year, that year begins to run later than nearly all other states. As McMaster acknowledged, of all the states which have adopted UFTA, Arizona alone rejected the extinguishment provision of section 9. 76 Wash.App. at 468, 886 P.2d 240. However, it did so the old-fashioned wayby legislative amendment.
In Arizona a claimant must bring an action "within one year after the fraudulent nature of the transfer or obligation was or through the exercise of reasonable diligence could have been discovered by the claimant." A.R.S.A. § 44-1009(1) (italics added). Arizona legislatively changed the text of the uniform statute to incorporate the fraudulent nature interpretation imposed by our majority yet rejected by the drafters of the Uniform Act. In so doing Arizona expressly recognized that UFTA's provision starts the statutory clock upon discovery of the transfer itself rather than upon discovery of the transfer's fraudulent nature. Our Legislature could have followed Arizona's lead, but elected uniformity and certainty instead. We are not the Legislature. I dissent.
DURHAM, C.J., and ALEXANDER and DOLLIVER, JJ., concur.