**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-16-0000858
08-NOV-2019
10:08 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

THOMAS FRANK SCHMIDT AND LORINNA JHINCIL SCHMIDT,
Petitioners/Plaintiffs-Appellants/Cross-Appellees,

vs.

HSC, INC., A HAWAI'I CORPORATION; RICHARD HENDERSON, SR.;
ELEANOR R.J. HENDERSON,
Respondents/Defendants-Appellees/Cross-Appellees/
Cross-Appellants.

_____

SCWC-16-0000858

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000858; CIVIL NO. 06-1-228)

NOVEMBER 8, 2019

NAKAYAMA, ACTING C.J., McKENNA, POLLACK, AND WILSON, JJ., AND
CIRCUIT COURT JUDGE KUBO IN PLACE OF RECKTENWALD, C.J., RECUSED

OPINION OF THE COURT BY McKENNA, J.

**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

## I.  Introduction

This case, which concerns $537,000 in excess foreclosure sale proceeds, returns to this court for the third time.[1]  The current iteration of the case arises from a separate action, Civil No. 06-1-228, filed on April 7, 2006 in the Circuit Court of the Third Circuit[2] ("circuit court") by Petitioners/ Plaintiffs-Appellants/Cross-Appellees Thomas Frank Schmidt and Lorinna Jhincil Schmidt (collectively, "Schmidts" or "Petitioners") after they obtained a December 21, 2004 final judgment against Realty Finance, Inc. ("RFI") for the excess proceeds, but later learned that those same proceeds were already transferred, leaving RFI insolvent and essentially judgment proof.  In their Amended Complaint filed on April 24, 2006, the Schmidts raised claims pursuant to Hawai'i Revised Statutes ("HRS") § 651C-7[3] alleging RFI fraudulently transferred the proceeds to the creditors of its parent company,

---

[1]    See Schmidt v. HSC, Inc., 131 Hawai'i 497, 319 P.3d 416 (2014) ("Schmidt II"); Realty Finance, Inc. v. Schmidt, No. 23441 (Haw. Mar. 18, 2004) (mem.) ("Schmidt I").

[2]    The Honorable Greg K. Nakamura presided.

[3]    HRS Chapter 651C governs Hawai'i's Uniform Fraudulent Transfer Act ("HUFTA").  HRS § 651C-7 provides remedies under HUFTA.

     The Schmidts' Amended Complaint also asserted a claim under HRS § 480-2, which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  This claim is not discussed further as the circuit court had granted Respondents' Motion for Judgment on the Pleadings as to this claim, and it is not the subject of the present appeal.  See Schmidt v. HSC, Inc., Nos. 29454, 29589, at 5 (App. Aug. 30, 2013) (mem.).

2

Respondent/Defendant-Appellee/Cross-Appellant HSC, Inc. ("HSC").

Following a bench trial on July 1 and 2, 2008, the circuit court

concluded the Schmidts did not prove by clear and convincing

evidence RFI actually intended to hinder, delay, or defraud any

creditors of RFI,[4] and therefore entered judgment in favor of

Respondents/Defendants-Appellees/Cross-Appellants HSC, Richard

Henderson, Sr. ("Richard"), and Eleanor R.J. Henderson

("Eleanor") (collectively, "Respondents").[5]

Petitioners appealed unsuccessfully to the Intermediate

Court of Appeals ("ICA"). In deciding the Schmidts' appeal, the

ICA did not discuss the merits of the Schmidts' challenge to the

circuit court's findings and conclusions, but rather concluded

that the Schmidts' HUFTA claim should have been dismissed as

untimely. See Schmidt, mem. op. at 10.

After accepting certiorari, this court determined that the

ICA's decision on the statute of limitations provision in HRS §

---

[4]    To be clear, the Schmidts' Amended Complaint cites only to HRS § 651C-7, which provides remedies to creditors under HUFTA. During closing argument before the circuit court, the Schmidts clarified that Respondents violated HRS § 651C-4(a)(1). See Schmidt II, 131 Hawai'i at 500, 319 P.3d at 419. Pursuant to the statute, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor . . . ." HRS § 651C-4(a)(1) (emphasis added).

[5]    Richard was HSC's president; Eleanor was a director of HSC and Richard's wife. See Schmidt II, 131 Hawai'i at 500, 319 P.3d at 419.

651C-9(1)[6] was wrong as a matter of law because the ICA "incorrectly held that the statute of limitations r[an] from the date of the transfer, rather than from the date that Petitioners discovered the fraudulent nature of the transfer." Schmidt II, 136 Hawai'i at 510, 319 P.3d at 429. This court vacated the ICA's Judgment on Appeal and remanded the case to the ICA. See 131 Hawai'i at 512, 319 P.3d at 431.

Consequently, the ICA published an opinion that "address[ed] the merits of the Schmidts' challenge to [the] [c]ircuit [c]ourt's rejection of their fraudulent transfers claims, irrespective of whether their claims are or may be barred by the statute of limitations." Schmidt v. HSC, Inc., 136 Hawai'i 158, 164, 358 P.3d 727, 733 (App. 2015). In sum, the

---

[6] "A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought . . . [u]nder section 651C-4(a)(1), within four years after the transfer was made . . . or within one year after the transfer or obligation was or could reasonably have been discovered by the claimant[.]" HRS § 651C-9(1).

One of the alternative theories presented by the Schmidts as to why their HUFTA claims were timely, which this court rejected in Schmidt II, was that the limitations period was extended by six years pursuant to the doctrine of fraudulent concealment in HRS § 657-20, which they argued applied to HUFTA by way of HRS § 651C-10 ("Unless displaced by the provisions of this chapter, the principles of . . . fraud . . . supplement its provisions."). See Schmidt II, 131 Hawai'i at 510, 319 P.3d at 429. This court noted in Schmidt II:

> Petitioners do not provide any definition of "fraudulent concealment" and therefore do not explain why the facts of this case constitute fraudulent concealment under any controlling legal standard. Petitioners therefore do not make any discernable argument as to why the doctrine of fraudulent concealment should apply to the facts of this case. Thus, we need not decide this issue.

Id.

4

ICA concluded the circuit court erred in dismissing the Schmidts' claims on the merits, as "the facts established by the record in this case . . . prove[d] by clear and convincing evidence that [RFI] actually intended to hinder, delay, or defraud any creditors of [RFI], as required by HRS § 651C-4(a)(1)." 131 Hawai'i at 179, 358 P.3d at 748. However, because the circuit court did not issue any findings or legal conclusions regarding <u>when the Schmidts discovered, or could reasonably have discovered</u>, the fraudulent nature of the transfers, the ICA remanded the case to the circuit court. <u>See</u> 136 Hawai'i at 180, 358 P.3d at 749.

After remand, on October 19, 2016, the circuit court issued its Findings of Fact and Conclusions of Law, which concluded the Schmidts' claims were time-barred, as the Schmidts could reasonably have discovered the fraudulent nature of the transfers on or before February 21, 2005, but did not file a complaint until April 7, 2006, past the one-year statute of limitations period for HUFTA claims pursuant to HRS § 651C-9(1). The circuit court entered Final Judgment on December 6, 2016.

The Schmidts appealed,[7] in sum asserting the circuit court clearly erred in determining when they could reasonably have

---

[7] Respondents also cross-appealed regarding their motion for attorneys' fees, which is not an issue before this court on certiorari, and therefore is not discussed further.

5

discovered the fraudulent nature of the subject transfers.[8]  The ICA rejected the Schmidts' challenge, concluding the circuit court did not err in making findings that "aided in its determination of how and when the fraudulent nature of the subject transfers could reasonably have been discovered by the Schmidts, and we are not left with a definite and firm conviction that, based on all of the evidence, mistakes were made in these findings."  Schmidt v. HSC, Inc., No. CAAP-16-0000858, at 3 (App. Nov. 30, 2018) (SDO).  Accordingly, the ICA entered a Judgment on Appeal on January 31, 2019 pursuant to its SDO affirming the circuit court's December 6, 2016 Final Judgment and October 19, 2016 Findings of Fact and Conclusions of Law.  See Schmidt, SDO at 8.

The Schmidts timely filed an Application for Writ of Certiorari on February 19, 2019 ("Application"), presenting the same three issues they previously argued before the ICA, all related to the date the circuit court determined the Schmidts could reasonably have discovered the fraudulent nature of the subject transfers:

> Whether the [ICA] gravely erred and the magnitude of such error or inconsistency dictates the need for further appeal where the ICA affirmed:

---

[8]     The Schmidts also raised an additional point of error regarding the circuit court's award of costs to Respondents, which is not an issue before this court on certiorari, and therefore is not discussed further.

6

(1)     the circuit court's findings of fact ("FOF") nos. 5,
        13, 19, 21, 22 and 23[;]

(2)     the circuit court's conclusions of law ("COL") nos.
        6, 8, 9 and 10[; and]

(3)     the circuit court's entry of final judgment denying
        [Petitioners'] complaint against the [Respondents].

In sum, the Schmidts assert they could not reasonably have discovered the fraudulent nature of the transfers until the July 26, 2005 deposition of Michael Chagami, the chief financial officer[9] of HSC, during which they learned RFI was insolvent, and that therefore their HUFTA claim was timely filed within the one-year statute of limitations period.[10]

This court accepted the Schmidts' Application.  The ICA erred in affirming the circuit court's October 19, 2016 Findings of Fact and Conclusions of Law and December 6, 2016 Final Judgment, as the circuit court's determination that the Schmidts "could have reasonably known of the Transfers and their fraudulent nature on or before February 21, 2005" contravenes this court's ruling in Schmidt II.

---

[9]     Although the record sometimes refers to Michael Chagami as HSC's president or treasurer, the circuit court's Findings of Fact identify him as the chief financial officer.

[10]    The Schmidts did not argue to the ICA and do not now argue in their Application (in contrast to their argument in the alternative in Schmidt II), see supra note 6, that a six-year extension to the limitations period prescribed in HRS § 651C-9(1) applies due to any "fraudulent concealment" by Respondents.

## II.  Background

The following section proceeds with a background based on the uncontested findings of fact ("FOF") of the circuit court and cited trial exhibits, followed by a recitation of the specific FOFs and conclusions of law ("COL") specifically challenged by the Schmidts, namely FOFs 5, 13, 19, 21, 22, and 23, and COLs 6, 8, 9, and 10.

### A.  Factual and Procedural Background

In Realty Finance, Inc. v. Schmidt, Civil No. 97-1235-03, RFI filed a foreclosure action (the "Foreclosure Case") in the Circuit Court of the First Circuit ("trial court").  An interlocutory decree of foreclosure was entered in favor of RFI and against the Schmidts.  After the Hawai'i Supreme Court remanded the case in Schmidt I for an accounting of the value of the Schmidts' mortgage debt in light of third-party payments that should have been applied, the trial court filed an Order dated October 12, 2004 stating RFI owed the Schmidts over $537,000.  Later, by Order dated November 24, 2004, the trial court denied the Schmidts' motion for prejudgment interest.  On December 21, 2004, the trial court entered a separate "final judgment" in the Foreclosure Case.  Later that same day, both the Schmidts and Respondents filed Notices of Appeal from the trial court's December 21, 2004 "final judgment," but the appeals were later deemed untimely as the appealable final order

8

in the post-judgment proceeding was the November 24, 2004 Order denying the Schmidts' motion for prejudgment interest.

Between December 6, 2004 and March 18, 2005, the Schmidts made no effort to enforce the final judgment (whether it be the final order entered on November 24, 2004 or the "superfluous" December 21, 2004 "final judgment"). Additionally, the Schmidts did not engage in any formal discovery prior to March 18, 2005.

On March 18, 2005, counsel for the Schmidts met with counsel for RFI regarding the Foreclosure Case. At this meeting, the Schmidts' counsel requested of RFI's counsel copies of the following checks (collectively, "Transfers"):

> (1) a check dated February 11, 2000, in the amount of $78,000, payable to Defendant Eleanor Henderson;
>
> (2) a check dated February 15, 2000, in the amount of $119,393.42, payable to Goodsill, Anderson, Quinn, and Stifel;
>
> (3) a check dated February 11, 2000, in the amount of $54,399.55, payable to Defendant Richard Henderson;
>
> (4) a check dated March 1, 2000, in the amount of $165,058.42, payable to Kamehameha Schools -- Bernice Pauahi Bishop Estate.

The Schmidts' March 21, 2005 request for production encompassed a formal request for copies of the Transfers. Thirty days later on April 20, 2005, the Schmidts' counsel received the copies of the Transfers, and RFI's April 22, 2005 response to the Schmidts' request for production stated that the requested copies of the Transfers had already been produced.

On June 29, 2005, the Schmidts noticed the deposition of RFI's chief financial officer, Michael Chagami, as RFI's Hawai'i Rules of Civil Procedure ("HRCP") Rule 30(b)(6)[11] designee relating to RFI's finances.  The deposition was taken on July 26, 2005.

Based on these facts and the following contested FOFs and COLs, the circuit court concluded the Schmidts' HUFTA claim was time-barred.

> FOF 5:  The Schmidts first noticed the 30(b)(6) deposition of RFI on August 25, 2004, approximately 5 months after remand. The Schmidts cancelled on September 3, 2004.  No other discovery was attempted between the March 18, 2004 remand order and October 12, 2004.
>
> . . . .
>
> FOF 13:  No stay of the judgment was obtained under HRCP Rule 62, and the Schmidts therefore could have executed on the Judgment after ten days of the entry of the Judgment.  See HRCP Rule 62(a) ("[N]o execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry[.]").
>
> . . . .

---

[11]   HRCP Rule 30(b)(6) states:

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

10

FOF 19: Between March 21, 2005 and April 20, 2005, thirty days elapsed prior to the Schmidts receiving the transfer checks. This indicates that if the Schmidts had commenced proceedings to enforce the judgment in the Foreclosure Case on December 6, 2004, then they could have received copies of three or four of the checks associated with the Transfers on January 6, 2005.

. . . .

FOF 21: However, that deposition could be taken any time after January 6, 2005, unless doing so was prohibited by a protective order. The Schmidts did not produce any evidence of a protective order or of any valid reason why the 30(b)(6) deposition could have not been taken earlier.

FOF 22: Generally, 45 days is more than enough time to schedule an oral deposition. Affording the Schmidts up to 45 days to schedule the Rule 30(b)(6) deposition and considering the 2005 calendar, the Rule 30(b)(6) deposition could have reasonably been taken on or before February 21, 2005.

FOF 23: At minimum, the Schmidts could have reasonably known of the Transfers and their fraudulent nature on or before February 21, 2005. To summarize, (1) final judgment was entered in the Foreclosure Case on November 24, 2004; (2) under HRCP Rule 62, after ten days passed, the Schmidts could have executed on the judgment on the first business day (December 6, 2004); (3) the Schmidts actually discovered the Transfer checks on or before January 6, 2005; (4) because 45 days is generally more than enough time to notice a deposition, the Schmidts could have taken the decisive deposition on or before February 21, 2005. Thus, the Schmidts reasonably could have known of the existence of the Transfers and their fraudulent nature on or before February 21, 2005.

. . . .

COL 6: Based on the preponderance of the evidence, the Schmidts could reasonably have discovered the existence of the Transfers and their fraudulent nature before April 8, 2005.

. . . .

COL 8: However, as set forth in the above findings, had Plaintiffs commenced proceedings to enforce the judgment in the Foreclosure Case on December 6, 2004, they could have obtained copies of the checks associated with the Transfers in January 2005, and could have deposed RFI's representative in January or February 2005.

COL 9: Likewise, had Plaintiffs commenced discovery into RFI's assets any time after the March 18, 2004 Hawai'i Supreme Court opinion, they would have discovered the fraudulent nature of the Transfers prior to April 8, 2005.

COL 10: Thus, the Schmidts could have reasonably discovered the existence of the Transfers and their fraudulent nature more than one year prior to filing their lawsuit, and the Schmidts' action in this case is time-barred under HRS § 651C-9(1).

## B. Appeal to the ICA

The Schmidts timely filed a Notice of Appeal to the ICA, and presented, in relevant part, three points of error in their Opening Brief:

A. The trial court committed reversible error in filing Findings of Fact (FOF) #s 5, 13, 19, 21, 22 and 23 . . . .

. . . .

B. The trial court committed reversible error in making Conclusions of Law (COL) 6, 8, 9 and 10 . . . .

. . . .

C. The trial court committed reversible error filing the December 6, 2016 final judgment . . . .

The ICA rejected the challenges. With respect to the Schmidts' challenges to the FOFs, the ICA concluded as follows: "FOFs 5 and 13 are each supported by the record and not clearly wrong," "FOF 19 is [not] inconsistent with FOFs 15-18," and "FOFs 19, 21, 22, and 23 are [not] based on speculation and therefore [not] clearly erroneous." Schmidt, SDO at 3. Further, "the [c]ircuit [c]ourt did not err in making findings that aided in its determination of how and when the fraudulent nature of the Transfers could reasonably have been discovered by the Schmidts, and we are not left with a definite and firm conviction that, based on all of the evidence, mistakes were made in these findings." Id.

12

With respect to the Schmidts' challenges to the COLs, the ICA concluded as follows:  the Schmidts failed to cite to the appellate record in support of their arguments and also failed to "explain or argue how [such exhibits] are significant with respect to the [c]ircuit [c]ourt's FOFs or COLs regarding the Schmidts' delayed discovery regarding the fraudulent nature of the subject transfers and their failure to file their complaint within the applicable statute of limitations."  Schmidt, SDO at 4.  Further, based on Hawai'i's jurisprudence regarding the "discovery rule" for generic fraud claims -- similar to the "discovery rule" in Freitag v. McGhie, 947 P.2d 1186 (Wash. 1997), which this court relied on in its analysis in Schmidt II -- "the statute of limitations begins running when the plaintiff knew or should have known of the damage," and that "[w]hen there has been a belated discovery of the cause of action, the issue whether the plaintiff exercised reasonable diligence is a question of fact for the court or jury to decide."  Schmidt, SDO at 5-6 (citing Thomas v. Kidani, 126 Hawai'i 125, 133, 267 P.3d 1230, 1238 (2011)).  Accordingly, the circuit court did not err in the contested COLs because "[t]he circuit court's finding -- that had the Schmidts conducted a reasonably diligent inquiry in aid of execution after obtaining judgment in their favor they reasonably would have discovered the fraudulent nature of the

13

Transfers over one year before filing of the complaint in this action -- is not clearly erroneous."  Schmidt, SDO at 6.

## C.    The Current Appeal

The Schmidts present the same three issues they previously argued before the ICA, all related to the date the circuit court determined the Schmidts reasonably could have discovered the fraudulent nature of the Transfers:

> Whether the [ICA] gravely erred and the magnitude of such error or inconsistency dictates the need for further appeal where the ICA affirmed:
>
> (1)   the circuit court's findings of fact ("FOF") nos. 5, 13, 19, 21, 22 and 23[;]
>
> (2)   the circuit court's conclusions of law ("COL") nos. 6, 8, 9 and 10[; and]
>
> (3)   the circuit court's entry of final judgment denying [Petitioners'] complaint against the [Respondents].

In sum, the Schmidts assert they could not reasonably have discovered the fraudulent nature of the Transfers until the July 26, 2005 deposition of HSC's chief financial officer, Michael Chagami, as that was the first time they learned of HSC's insolvency.  Using July 26, 2005 as the date when they could reasonably have discovered the fraudulent nature of the Transfers, the Schmidts argue they were well within the one-year statute of limitations period when they filed their HUFTA claim on April 7, 2006.

The Schmidts appear to make the following specific challenges to the circuit court's FOFs[12] and COLs:

FOF 5:[13]  The Schmidts assert this finding is incomplete because the HRCP Rule 30(b)(6) deposition was cancelled "when this Court's award of fees and costs on the earlier appeal was paid by [RFI]'s [lawyers'] trust account, so there was nothing to discover and at no time did [RFI]'s lawyers ever reveal that [RFI] was only a corporate shell."

FOF 13:[14] The Schmidts also assert this finding is incomplete because it is "useless to execute on a judgment when a case is on appeal," and both parties had immediately filed appeals following the December 21, 2004 "final judgment," and were unaware that their appeals were untimely until the appeals were dismissed by the Hawai'i Supreme Court on May 9, 2005.  The Schmidts appear to suggest that because the Chagami deposition occurred on June 29, 2005, not too long after the May 9, 2005 Order, they had been reasonably diligent in their efforts to

---

[12]     For ease of reference, each challenged FOF previously quoted supra pages 10–12, is repeated in a respective footnote, with formatting and citation omitted.

[13]     FOF 5:  The Schmidts first noticed the 30(b)(6) deposition of RFI on August 25, 2004, approximately 5 months after remand.  The Schmidts cancelled on September 3, 2004.  No other discovery was attempted between the March 18, 2004 remand order and October 12, 2004.

[14]     FOF 13:  No stay of the judgment was obtained under HRCP Rule 62, and the Schmidts therefore could have executed on the Judgment after ten days of the entry of the Judgment.  See HRCP Rule 62(a) ("[N]o execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry[.]").

execute on the Foreclosure Case judgment.  The Schmidts also assert, without explanation, that FOF 13 is inconsistent with FOFs 10,[15] 11,[16] and 15-18.[17]  They additionally point out that they had attempted to execute on the judgment when they filed an Ex Parte Motion for Issuance of Execution and Garnishment on the Final Judgment dated August 23, 2005, but on September 1, 2005, the trial court denied it without prejudice to filing a separate action against the proper parties.

FOF 19:[18]  The Schmidts assert this finding is speculation and that it was "proper to not enforce the appeal judgment out

---

[15]     FOF 10:  The Schmidts and RFI filed notices of appeal from the December 21, 2004 Judgment.

[16]     FOF 11:  On May 9, 2005, the Hawai'i Supreme Court entered its Order Dismissing Appeal in the Foreclosure Case . . . .

[17]     FOF 15:  On March 18, 2005, the Schmidts' counsel met with RFI's counsel in regard to the Foreclosure Case.  At that time, the Schmidts' counsel requested that RFI's counsel provide them copies of the checks associated with the four transfers that are the subject of this Fraudulent Transfer case.

        FOF 16:  On March 21, 2005, in the Foreclosure Case, the Schmidts served RFI their ["]First Request for Production . . . .["]  Included in the request for production of documents were requests which generally required the production of checks associated with the fraudulent transfers that are the subject of this action . . . .

        FOF 17:  On April 20, 2005, the Schmidts' counsel received copies of three or four of the checks associated with the Transfers from RFI's counsel.

        FOF 18:  On April 22, 2005, RFI's counsel signed the ["]Response to Defendants['] . . . First Request for Production . . . .["] . . . RFI indicated that it had already produced copies of checks relating to the Transfers to the Schmidts.

[18]     FOF 19:  Between March 21, 2005 and April 20, 2005, thirty days elapsed prior to the Schmidts receiving the transfer checks.  This indicates that if the Schmidts had commenced proceedings to enforce the judgment in the Foreclosure Case on December 6, 2004, then they could have received copies of three or four of the checks associated with the Transfers on January 6, 2005.

16

of respect for the appellate process." They reiterate that the circuit court erred in using November 24, 2004 to calculate the date the Schmidts could have executed on the final judgment, as the "final judgment" did not issue until December 21, 2004, and so any execution and garnishment "would be premature and also [the] Schmidts needed to know what assets to execute upon or garnish."

FOF 21:[19] The Schmidts contend this finding is erroneous because the deposition could not have taken place because there were pending appeals before the Hawai'i Supreme Court until those appeals were dismissed on May 9, 2005. They argue that they therefore "acted reasonably in delaying that until they knew what assets to execute upon or garnish after the appeal was dismissed. That process was begun by seeking documentary evidence in early 2005 proving Schmidt acted reasonably in delaying attempting collection on the judgment."

FOF 22:[20] The Schmidts assert this finding is based upon an erroneous analysis and speculation that forty-five days is sufficient time to schedule a deposition, and without any record

---

[19]    FOF 21: However, that deposition could be taken any time after January 6, 2005, unless doing so was prohibited by a protective order. The Schmidts did not produce any evidence of a protective order or of any valid reason why the 30(b)(6) deposition could have not been taken earlier.

[20]    Generally, 45 days is more than enough time to schedule an oral deposition. Affording the Schmidts up to 45 days to schedule the Rule 30(b)(6) deposition and considering the 2005 calendar, the Rule 30(b)(6) deposition could have reasonably been taken on or before February 21, 2005.

evidence supporting this finding.  They argue that considering the amount of time this case spent in the trial and appellate levels, waiting four months out of respect for the appellate process was not unreasonable.

FOF 23:[21]  The Schmidts repeat that the circuit court erred in stating the final judgment issued on November 24, 2004 instead of December 21, 2004.  They argue that FOF 23 is speculation and contrary to the evidence, and repeat arguments made with respect to the prior contested FOFs.  In sum, the Schmidts assert they could not have conducted any discovery prior to December 21, 2004, because such discovery would have been impermissible prejudgment discovery.  The Schmidts emphasize that the fraudulent nature of the Transfers was not discovered until the Chagami deposition on July 26, 2005.  They state they were diligent in conducting "early discovery" when they obtained check copies on April 20, 2005 and learned of the payees at that time, and they concede that "at the earliest,"

---

[21]    FOF 23: At minimum, the Schmidts could have reasonably known of the Transfers and their fraudulent nature on or before February 21, 2005.  To summarize, (1) final judgment was entered in the Foreclosure Case on November 24, 2004; (2) under HRCP Rule 62, after ten days passed, the Schmidts could have executed on the judgment on the first business day (December 6, 2004); (3) the Schmidts actually discovered the Transfer checks on or before January 6, 2005; (4) because 45 days is generally more than enough time to notice a deposition, the Schmidts could have taken the decisive deposition on or before February 21, 2005.  Thus, the Schmidts reasonably could have known of the existence of the Transfers and their fraudulent nature on or before February 21, 2005.

18

the statute of limitations period began running on April 20, 2005.

The Schmidts' challenge to COLs 6, 8, 9, and 10 are premised on the same arguments they presented with respect to FOF 23. That is, that they did not discover the fraudulent nature of the Transfers until July 26, 2005 at the conclusion of the Chagami deposition. Given the long history of litigation, and the length of time the case was on appeal, the Schmidts argue that noticing a deposition in "9-12 months is a reasonable period of time, not 45 days." According to the Schmidts, "the inquiry about whether [they] acted diligently starts on May 9, 2005 when this Court dismissed both appeals in the [Foreclosure] Case," and that therefore, their HUFTA claim is not time-barred.

In response, Respondents provide a timeline of events highlighting how the Schmidts "sat idle, making no effective effort to inquire into RFI's financial condition or otherwise obtain information relating to collection of RFI's debt." However, in addition to explaining the correctness of the ICA's decision, Respondents also raise an argument previously raised to the ICA, which the ICA chose not to address in its SDO: the Schmidts lost standing to pursue their HUFTA claim because the underlying judgment awarding them the $537,000 in surplus foreclosure proceeds "lapsed in 2014 and . . . was vacated . . .

in July 2016 pursuant to HRS § 657-5.[22]" Respondents argue that without an outstanding judgment, the Schmidts' fraudulent transfer claims are now moot.

The Schmidts timely replied that "Respondents' cases about mootness are misleading, useless, and illusory because this is not a collection on the original judgment but a new statutory [H]UFTA claim . . . ." They contend "Respondents are trying to divert the court's attention from the correct focus . . . . There is no way that [the] Schmidts could have known of the fraudulent nature of the transfers by RFI on or before February 21, 2005."

### III.   Standard of Review

> We review a trial court's findings of fact under the clearly erroneous standard. A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. A finding of fact is also clearly erroneous when the record lacks substantial evidence to support the finding . . . . Hawai'i appellate courts review conclusions of law de novo, under the right/wrong standard.

Beneficial Hawaii, Inc. v. Kida, 96 Hawai'i 289, 305, 30 P.3d 895, 911 (2001) (internal quotation marks, brackets, and citations omitted); see also Chun v. Bd. of Trs. of the Emps.'

---

[22]   HRS § 657-5 states:

> Unless an extension is granted, every judgment and decree of any court of the State shall be presumed to be paid and discharged at the expiration of ten years after the judgment or decree was rendered. No action shall be commenced after the expiration of ten years from the date a judgment or decree was rendered or extended . . . .

Ret. Sys. of the State of Hawai'i, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005).

## IV. Discussion

### A. This court does not address the effect of the vacatur of the Foreclosure Case judgment.

As a preliminary matter, Respondents argue that the Schmidts lack standing to continue this appeal regarding their 2006 HUFTA claims because the December 21, 2014 Foreclosure Case judgment became satisfied as a matter of law in 2014.[23] As noted by Respondents, however, the circuit court has not addressed the issue and the ICA did not address the issue because it ruled in Respondents' favor on alternative grounds. In addition, this court recently clarified that "[i]n Hawai'i state courts, standing is a prudential consideration regarding the proper -- and properly limited -- role of courts in a democratic society and is not an issue of subject matter jurisdiction, as it is in federal courts." Tax Foundation v. State, 144 Hawai'i 175, 188, 439 P.3d 127, 140 (2019) (internal quotation marks omitted). Because (1) the issue is not one of subject matter jurisdiction, (2) is not an issue adequately briefed on certiorari, (3) has not been addressed by the circuit court or the ICA, and (4) this

---

[23] In Realty Finance, Inc. v. Schmidt, No. CAAP-16-0000536 (App. May 14, 2019) (SDO), cert. denied, SCWC-16-536 (Haw. Aug. 14, 2019), the ICA affirmed the Circuit Court of the First Circuit's July 7, 2016, vacatur of the December 21, 2014 Foreclosure Case judgment because the Schmidts failed to renew it within ten years per HRS § 657-5 (2016). Realty Finance, SDO at 2-3.

21

court is vacating and remanding to the circuit court, this court declines to address the issue at this time.

**B.    The Schmidts timely raised their HUFTA claims.**

The crux of the Schmidts' challenge on certiorari is that the ICA erred in affirming the circuit court's ruling as to "when [the] Schmidts discovered or should have discovered . . . the fraudulent nature of the transfers."

The ICA's SDO accurately discusses the current jurisprudence regarding the "discovery rule" associated with HRS § 651C-9 and similar UFTA statutes.  See Schmidt, SDO at 5-6. Namely, this court ruled in Schmidt II that the limitations period in HRS § 651C-9(1) refers to when "a fraudulent transfer, and not simply a transfer" "was or could reasonably have been discovered by the claimant."  Schmidt II, 131 Hawai'i at 507, 319 P.3d at 426 (citing HRS § 651C-9(1)) (emphasis in original).  In Schmidt II, this court concluded the interpretations by the Hawai'i federal bankruptcy court and the Washington Supreme Court regarding relevant UFTA provisions were consistent with the Hawai'i legislature's purpose behind HUFTA.  See Schmidt II, 131 Hawai'i at 506-07, 319 P.3d at 425-26 (citing In re Maui Indus. Loan & Fin. Co., 454 B.R. 133, 137 (Bankr. D. Hawai'i 2011); Freitag, 947 P.2d at 1189).  Thus, to be consistent with the premise that it would be "legally absurd and unjust to interpret the discovery rule to preclude claims under the UFTA if

22

plaintiffs were never aware they held a potential claim," Schmidt II, 131 Hawai'i at 508, 319 P.3d at 427, "actual knowledge of the fraud [is] inferred if the aggrieved party, through the exercise of due diligence, could have discovered it." Freitag, 947 P.2d at 1189 (emphasis added).

What was not fully discussed by the ICA, however, is the rationale behind this court's holding in Schmidt II. Although not expressly stated in Schmidt II, that the statute of limitations begins to run when the fraudulent nature of the transfer is discovered or reasonably discoverable, as opposed to when a creditor discovered the transfer, is "more protective of innocent creditors." Schmidt II, 131 Hawai'i at 506, 319 P.3d at 425 (citation omitted). This means that the date by which the fraudulent nature of a transfer is discovered or discoverable should be later than the date by which the transfer alone is discovered. Indeed, the purpose of HUFTA

> would be undermined if the one year period began once plaintiffs discovered the existence of a transfer, even if they were unaware of its fraudulent nature. Under that interpretation, plaintiffs would lose the right to pursue a remedy in court for fraudulently incurred injuries even though they could not have become aware of the existence of their claims.

Schmidt II, 131 Hawai'i at 508, 319 P.3d at 427.

Cases from other jurisdictions are in accord. Construing Ohio's version of the Uniform Fraudulent Transfer Act ("UFTA"), the Sixth Circuit Court of Appeals stated:

23

> The Ohio UFTA's overall purpose is to discourage fraud and provide aggrieved creditors with a means to recover assets wrongfully placed beyond their reach. Accordingly, to require a claimant to bring suit within one year of discovering a transfer, without having discovered facts that would put the claimant on notice as to the transfer's fraudulent nature, would be to interpret § 1336.09(A) in a manner that is directly at odds with the animating purpose of the UFTA.

In re Fair Finance, 834 F.3d 651, 674 (6th Cir. 2016); see also Official Comm. of Unsecured Creditors of Great Lakes Quick Lube LP v. Theisen, 920 N.W.2d 356, 365 (Wis. App. 2018) ("statute of limitations [begins to run] from the point at which the claimant discovers or reasonably could have discovered the fraudulent nature of the transfer").

The purpose of HUFTA would be further undermined if creditors are expected to "reasonably discover" the fraudulent nature of a transfer even before they actually uncover the existence of the transfer. Yet, that is the upshot of the circuit court's October 19, 2016 FOFs and COLs. When considered in their entirety, it is apparent that the circuit court agreed with the Schmidts that they discovered the fraudulent nature of the Transfers at the Chagami deposition on July 26, 2005. However, by finding that the Schmidts could have "reasonably discovered" the fraudulent nature of the Transfers by February 21, 2005 -- well in advance of the Chagami deposition and, more importantly, prior to March 18, 2005, when the Schmidts had actually discovered the mere existence of the Transfers when HSC's counsel produced a February 2000 bank statement to the

24

Schmidts -- the circuit court necessarily found that the Schmidts could (and should) have discovered both the existence and fraudulent nature of the Transfers prior to February 21, 2005. Such a determination contravenes this court's statutory interpretation of HRS § 651C-9(1) and discussion of HUFTA's purpose in <u>Schmidt II</u>. Accordingly, the circuit court erred as a matter of law when it determined that the Schmidts could have reasonably discovered the fraudulent nature of the Transfers by February 21, 2005, and the ICA erred in affirming the circuit court in this regard.

Here, the Schmidts did not discover the existence of the Transfers until March 18, 2005, and discovered the fraudulent nature of the Transfers shortly thereafter on July 26, 2005.[24] The circuit court made no finding that the Schmidts did not act diligently during this four-month period. Indeed, the record shows the opposite. On March 21, 2005, prior to the dismissal of the Foreclosure Case appeals, the Schmidts made a formal request for production, and on April 20, 2005, the Schmidts received copies of the checks evidencing the Transfers. Within about two months, on June 29, 2005, the Schmidts noticed the deposition of RFI's chief financial officer, Michael Chagami, as

---

[24] Although the Schmidts concede that "they reasonably discovered the insider transfers and their fraudulent nature . . . at the earliest on April 20, 2005 when they got copies of the front and back of the four checks showing the payees," the circuit court found that the Schmidts discovered the fraudulent nature of the Transfers on July 26, 2005, and this court does not disturb that finding.

25

RFI's HRCP Rule 30(b)(6) designee relating to RFI's finances, and the deposition was taken on July 26, 2005. Such steps undoubtedly demonstrated "reasonable" due diligence.

Based on the foregoing, this court concludes that the statute of limitations for the Schmidts' HUFTA claim did not begin until July 26, 2005, and therefore the Schmidts timely raised their HUFTA claims.

## V. Conclusion

For the foregoing reasons, this court vacates the ICA's January 31, 2019 Judgment on Appeal and the circuit court's December 6, 2016 Final Judgment and remands this case to the circuit court for further proceedings consistent with this opinion.

| | |
|---|---|
| R. Steven Geshell<br>for petitioner | /s/ Paula A. Nakayama |
| | /s/ Sabrina S. McKenna |
| Paul Alston<br>for respondents | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |
| | /s/ Edward H. Kubo, Jr. |

